## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ANGEL BAKOV, and KINAYA HEWLETT, individually and on behalf of all others similarly situated, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CONSOLIDATED TRAVEL HOLDINGS )<br>GROUP, INC., a Florida corporation, )<br>JAMES H. VERRILLO, an individual, )<br>DANIEL E. LAMBERT, an individual, )<br>JENNIFER POOLE, an individual, DONNA )<br>HIGGINS, an individual, THE )<br>MARKETING SOURCE, INC., a Florida )<br>corporation, VANCE L. VOGEL, SUN )<br>BRIDGE SYSTEMS, LLC, a Florida )<br>corporation, and CLIFFORD ALBRIGHT, )<br>an individual, )<br>)<br>Defendants. ) | Case No. 0:19-CV-61509-WPD<br><br>**FIRST AMENDED**<br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Angel Bakov and Kinaya Hewlett bring this Class Action Complaint against Defendants Consolidated Travel Holdings Group, Inc., James H. Verrillo, Daniel E. Lambert, Jennifer Poole, and Donna Higgins, The Marketing Source, Inc., Vance L. Vogel, Sun Bridge Systems, LLC, Clifford Albright on behalf of themselves and all others similarly situated, and allege upon personal knowledge as to themselves and their own experiences, upon record and testimonial evidence, upon investigation of counsel, and, as to other matters, upon information and belief:

## I.      INTRODUCTION

1.      Defendants authorized, directed, or participated in a call center located in India making robocalls to millions of people around the U.S. offering a "free cruise." Those calls were all made using "prerecorded voice," within the meaning of the Telephone Consumer Protection

1

Act, 47 U.S.C. § 227 ("TCPA"), and without the express written consent of the people answering those calls.  Defendants' thus violated the TCPA on a massive scale.

## II.    JURISDICTION AND VENUE

2.    The Court has original jurisdiction of this action because Plaintiffs' claim arises under laws of the United States. *See* 28 U.S.C. § 1331. The Court also has original jurisdiction of this action because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. *See* 28 U.S.C. § 1332(a)(1). Plaintiffs are citizens of Illinois and California and Defendants are all citizens of Florida.

3.    The Court has personal jurisdiction over Defendants because they are all operating, conducting, engaging in, or carrying on a business or business venture in this state or have an office or agency in this state. Fla. Stat. Ann. § 48.193(1)(a)(1). The Court also has personal jurisdiction over Defendants because they all have engaged in substantial and not isolated activity within this state. Fla. Stat. Ann. § 48.193(2).

4.    Venue is proper in this District because all Defendants reside in the State and some or all the Defendants reside within this district. *See* 28 U.S.C. § 1391(b)(1). Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claim occurred here. *See* 28 U.S.C. § 1339(b)(2).

## III.   PLAINTIFFS

### A.    Angel Bakov

5.    Plaintiff Angel Bakov is an individual domiciled in Cook County, Illinois and a citizen of the State of Illinois.

6.      Defendants' Indian call center operator, Virtual Voice Technologies Pvt. Ltd. ("Virtual Voice") called Mr. Bakov March 26, 2015, March 27, 2015, April 17, 2015, April 27, 2015, and—after filing the initial complaint in the Illinois Class Action—June 17, 2015.

7.      Mr. Bakov answered several of these calls from Virtual Voice, including the call in June 2015, and, when he did, he heard "Hi, this is Jennifer with Holiday Cruise Line on a recorded line. Can you hear me okay?"

8.      Mr. Bakov never consented to receiving these calls.

9.      These calls annoyed and frustrated Mr. Bakov.

10.     In particular, the call which occurred on June 17, 2015 was highly intrusive and upsetting.  After Defendants had already made four unsolicited calls using prerecorded voice to Mr. Bakov, Mr. Bakov instituted the Illinois Class Action.  Then, Defendants had the nerve to call him again.

11.     Mr. Bakov received his final call on his cell phone while he was at his office where he was employed as an attorney.  His cell phone ringer was activated and the phone rang.  Mr. Bakov then picked up the call and heard the familiar prerecorded prompts from "Jennifer with Holiday Cruise Line."

12.     During the time Mr. Bakov received his call, he was interrupted from the work he was performing on behalf of his clients.

**B.      Kinaya Hewlett**

13.     Plaintiff Kinaya Hewlett is an individual domiciled in Sacramento County, California and a citizen of the State of California.

14.     Virtual Voice called Ms. Hewlett on many occasions throughout 2015 and 2016. Ms. Hewlett's records identify calls from numbers associated with Defendants on January 22,

2015, January 24, 2015, January 27, 2015, March 8, 2016, and March 14, 2016.  However, because Defendants used thousands of outgoing numbers during the Holiday Cruise Line campaign, this list is not exhaustive of all the calls Ms. Hewlett received from Defendants.

15.     Ms. Hewlett answered the calls she received from Virtual Voice in March 2016 and, when she did, heard a prerecorded voice say, "Hi, this is Jennifer with Holiday Cruise Line on a recorded line. Can you hear me okay?"

16.     Ms. Hewlett never consented to receiving these calls.

17.     Ms. Hewlett received calls in March 2016 while she was in the house where she worked and lived as a home health aide.

18.     These calls annoyed and frustrated Ms. Hewlett so badly that she began screaming at the phone when she received the calls in March 2016.  At this point, a live person came onto the line and began screaming back at her.

19.     Ms. Hewlett was so distressed from the calls that she went on to spend money on purchasing a new phone plan so that Defendants would not know her new phone number.

## IV.     DEFENDANTS

### A.     Consolidated Travel Holdings Group, Inc.

20.     Consolidated Travel Holdings Group ("Consolidated Holdings") is a Florida corporation with its principal place of business at 100 W. Cypress Creek Road, Suite 640, Fort Lauderdale, Florida 33309.

21.     Consolidated Holdings wholly owns non-party Consolidated World Travel, Inc. ("Consolidated Travel") and Caribbean Cruise Line, Inc. ("Caribbean"). Consolidated Travel is a defendant in a related class, described below. Partial summary judgment was entered against Caribbean in an unrelated TCPA class action, which has since settled.

**B.  James H. Verrillo**

22.    Mr. Verrillo is an individual domiciled at 88987 Old Highway, Tavernier, Florida 33070-4008 and a citizen of the State of Florida.

23.    Mr. Verrillo owns or controls, or has owned or controlled, numerous businesses in the marketing and hospitality industries, including Consolidated Holdings, Consolidated Travel, and Caribbean.

24.    During the relevant time, Consolidated Holdings had two directors. Mr. Verrillo was one of them.

25.    Mr. Verrillo ran the operations of Consolidated Travel, oversaw all its departments (including marketing, fulfillment, and customer service), determined salaries for higher-ranking employees, and, together with Mr. Lambert, made the decision to wind down its U.S. operations in March 2016.

26.    Mr. Verrillo authorized the illegal telemarketing campaign at issue in this lawsuit by, among other things, authorizing payments to Virtual Voice and others and receiving reporting regarding call volume and other similar matters.

27.    Since he has been involved in telemarketing for years, has been the subject of multiple government investigations regarding the illegality of his telemarketing activities, has entered multiple settlement agreements with State Attorneys General barring him from engaging in conduct at issue in this case, has been named as a defendant in numerous private lawsuits alleging TCPA violations, and has had judgment for TCPA violations entered against a company he owns or controls (Caribbean), Mr. Verrillo's failure to comply with the law was intentional or represents a gross failure on his part.

**C.      Daniel E. Lambert**

28.      Mr. Lambert is an individual domiciled at 100 W Cypress Creek Rd, Suite 640, Fort Lauderdale, Florida 33309-2181 and a citizen of the State of Florida.

29.      Mr. Lambert owns or controls, or has owned or controlled, numerous businesses in the marketing and hospitality industries, including Consolidated Holdings, Consolidated Travel, and Caribbean.

30.      During the relevant time, Consolidated Holdings had two directors. Mr. Lambert was one of them.

31.      Mr. Lambert ran the operations of Consolidated Travel, oversaw all departments (including marketing, fulfillment, and customer service), determined salaries for higher-ranking employees, and, together with Mr. Verrillo, decided to wind down its U.S. operations in March 2016.

32.      Mr. Lambert authorized the illegal telemarketing campaign at issue in this lawsuit by, among other things, authorizing the agreement between Consolidated Travel and Virtual Voice and receiving reporting regarding call volume and other similar matters.

33.      Since he has been involved in telemarketing for years, has been the subject of multiple government investigations regarding the illegality of his telemarketing activities, has entered multiple settlement agreements with State Attorneys General barring him from engaging in conduct at issue in this case, has been named as a defendant in numerous private lawsuits alleging TCPA violations, and has had judgment for TCPA violations entered against a company he owns or controls (Caribbean), Mr. Lambert's failure to comply with the law was intentional or represents a gross failure on his part.

**D.** **Jennifer Poole**

34.     Defendant Jennifer Poole is an individual domiciled at 6762 NW 70th Avenue, Tamarac, Florida 33321 and a citizen of the State of Florida.

35.     During the Class Period, Ms. Poole was President and Director of Marketing for Consolidated Travel.

36.     Ms. Poole participated in the illegal telemarketing campaign at issue in this lawsuit by, among other things, testing the use of prerecorded voice in telemarketing calls, revising and approving the script used to create the prerecorded voice files VVT used, controlling the flow of calls transferred by VVT to CWT and its affiliates' call centers in the U.S., providing various forms of day-to-day oversight or support for the campaign, and receiving and analyzing reporting regarding call volume and other similar matters.

37.     Since she has been involved in telemarketing for years, has been employed by companies that were the subject of multiple government investigations regarding the illegality of those companies' telemarketing activities, and has been named as a defendant in numerous private lawsuits alleging TCPA violations, Ms. Poole's failure to comply with the law was intentional or represents a gross failure on her part.

**E.** **Donna Higgins**

38.     Ms. Higgins is an individual domiciled at 5371 NE 17th Terrace, Fort Lauderdale, Florida 33334 and a citizen of the State of Florida.

39.     During the Class Period, Ms. Higgins was the President and Marketing Manager of Consolidated Travel.

40.     Ms. Higgins authorized and participated in the illegal telemarketing campaign at issue in this lawsuit by, among other things, executing agreements with Virtual Voice, The

Marketing Source, Inc., and Media Monitors, Inc., coordinating quality control work for the campaign, interacting with call centers, monitoring the compliance with "Do Not Call" requests, and receiving and analyzing reporting regarding call volume and other similar matters.

41.     Since she has been involved in telemarketing for years and has been employed by companies that were the subject of multiple government investigations regarding the illegality of those companies' telemarketing activities, Ms. Higgins' failure to comply with the law was intentional or represents a gross failure on her part.

**F.     The Marketing Source, Inc.**

42.     The Marketing Source, Inc. is a Florida corporation with its principal place of business at 16332 Gulf Blvd, No. 2A, Redington Beach, FL 33708.

43.     For a part of the Class Period, The Marketing Source interacted with Virtual Voice, it provided quality control services with respect to the illegal telemarketing campaign at issue in this action, it had complete access to the telemarketing software and underlying systems Virtual Voice call center agents used to make calls for the campaign, it trained Virtual Voice call center agents to make those calls, it monitored the calls Virtual Voice agents made, it accessed and listened to audio recordings of those calls, it communicated with and provided reporting to Virtual Voice regarding the performance of its agents, and it communicated with and provided reporting to Consolidated Travel regarding the performance of Virtual Voice agents and other matters related to the campaign. Consolidated Travel paid The Marketing Source to provide these services.

**G.     Vance L. Vogel**

44.     Mr. Vogel in an individual domiciled at 17745 Gulf Boulevard, Reddington Shores, Florida 33708 and a citizen of the State of Florida.

45.     Mr. Vogel is the sole owner of The Marketing Source. Mr. Vogel was also the sole of owner of Media Monitors, Inc., which was also a Florida corporation, shared an address with The Marketing Source, and provided Consolidated Travel with the same services The Marketing Source provided. However, Media Monitors has since been dissolved.

46.     Mr. Vogel authorized and participated in the illegal telemarketing campaign at issue in this lawsuit by, among other things, providing quality control services with respect to the illegal telemarketing campaign at issue in this action, accessing the telemarketing software and underlying systems Virtual Voice call center agents used to make calls for the campaign, training Virtual Voice call center agents to make those calls, monitoring the calls Virtual Voice agents made, accessing and listening to audio recordings of those calls, communicating with and providing reporting to Virtual Voice regarding the performance of its agents, and communicating with and providing reporting to Consolidated Travel regarding the performance of Virtual Voice agents and other matters related to the campaign.

47.     Since he has been involved in telemarketing for years, has been the subject of multiple government investigations regarding the illegality of his marketing activities, and has entered multiple settlement agreements with State Attorneys General barring him from engaging in certain conduct at issue in this case, Mr. Lambert's failure to comply with the law was intentional or represents a gross failure on his part.

**H.     Sun Bridge Systems, LLC**

48.     Sun Bridge Systems, LLC ("Sun Bridge") is a Florida limited liability company with its principal place of business at 518 Lakewood Drive, Oldsmar, Florida 34677.

49.     During the Class Period, Sun Bridge interacted with Virtual Voice, it provided Virtual Voice with the telemarketing software it used to conduct the illegal telemarketing

campaign at issue in this action, it provided Virtual Voice multiple logins per agent, it provided support services related to use of that software, it had complete access to that software and underlying systems, it trained Virtual Voice call center agents to make those calls, and it communicated with and provided reporting to Consolidated Travel regarding the performance of Virtual Voice agents and other matters related to the campaign. Consolidated Travel paid Sun Bridge to provide these services.

### I.       Clifford Albright

50.     Mr. Albright is an individual domiciled at 518 Lakewood Drive, Oldsmar, Florida 34677 and a citizen of the State of Florida.

51.     Mr. Albright is the sole owner of Sun Bridge and singlehandedly developed and coded the telemarketing software Virtual Voice used to conduct the illegal telemarketing campaign at issue in this action.

52.     During the Class Period, Mr. Albright interacted with Virtual Voice, he provided Virtual Voice with the telemarketing software it used to make outbound telemarketing calls, he rented the server space in Tampa, Florida that hosted this software, he provided Virtual Voice multiple logins per agent for use of that software, he provided support services related to use of that software, he had complete access to that software and underlying systems, he trained Virtual Voice call center agents to make those calls, and he communicated with and provided reporting to Consolidated Travel regarding the performance of Virtual Voice agents and other matters related to the campaign.

53.     Since he has been involved in telemarketing for years, Mr. Albright's failure to comply with the law was intentional or represents a gross failure on his part.

## V.   THE ILLINOIS CLASS ACTION

54.   Plaintiffs Bakov and Hewlett are court-appointed class representatives in *Bakov, et al. v. Consolidated World Travel, Inc. (d/b/a Holiday Cruise Line)*, No. 15-cv-2980 (N.D. Ill.) (the "Illinois Class Action"), currently pending before Hon. Harry D. Leinenweber, U.S.D.J.

55.   The Class Judge Leinenweber certified is defined as persons (1) who Virtual Voice Technologies called from December 29, 2014 through March 20, 2016, to market a cruise aboard the Grand Celebration cruise liner sold by Consolidated Travel, and (2) who answered such calls in the state of Illinois. *See* **Exhibit A** at 10, 36–40, 62 (Memorandum Opinion and Order, dated Mar. 21, 2019).

56.   In the Illinois Class Action, Plaintiffs are pursuing a single claim against Consolidated Travel for violations of the TCPA.

57.   This lawsuit asserts the same claim on behalf of the same Class against additional parties who authorized, directed, or participated in the illegal telemarketing campaign at issue in the Illinois Class Action.

58.   Some of the Defendants were named in the Illinois Class Action but were dismissed for lack of jurisdiction on August 4, 2016.   Before Plaintiffs filed their initial Complaint in that matter. (While Plaintiffs' cases were consolidated in Illinois, where Mr. Bakov resides, Consolidated Travel and Defendants all reside within the District or are otherwise subject to this Court's jurisdiction.) Those Defendants are Consolidated Holdings, Mr. Verrillo, Mr. Lambert, Ms. Poole, and Ms. Higgins. These Defendants each own or control Consolidated Travel or were employed by Consolidated Travel during the relevant time period. *See* **Exhibit B** at 2–7 (Memorandum Opinion and Order, dated Aug. 4, 2016).  Before the Northern District of Illinois determined Defendants Consolidated Holdings, Mr. Verillo, Mr. Lambert, Ms. Poole, and Ms.

Higgins are not subject to its jurisdiction, no binding judgment was or could have been entered against them by that Court.

59.     The other Defendants are The Marketing Source, Mr. Vogel, Sun Bridge, and Mr. Albright. They are also each affiliated with Consolidated Travel but did not become known to Plaintiffs until the discovery phase of the Illinois Class Action.

60.     Plaintiffs allege that all the Defendants named herein, together with Consolidated Travel, are jointly and severally liable for violations of the TCPA.

## VI.     FACTUAL ALLEGATIONS

### A.     The Illegal Telemarketing Campaign

61.     Consolidated Travel promotes vacation packages by mail, direct dial telephone calls, telephone call transfers, television, and radio for the purpose of selling vacation packages over the phone. The vacation package at issue here is a "free" two-night cruise for two aboard the Grand Celebration cruise liner sold for the cost of "port fees." (the "Grand Celebration Vacation Package").

62.     Consolidated Travel hired Virtual Voice, an Indian company, on a commission basis to help market and sell the Grand Celebration Vacation Package. From December 29, 2014, through March 20, 2016 (the "Class Period"), Virtual Voice called millions of people in the U.S. to offer anybody who was interested "a free cruise simply to show you a great time." Of those millions, hundreds of thousands are Class members.

63.     Virtual Voice was Consolidated Travel's agent in making phone calls to Plaintiffs and class members.  Consolidated Travel conferred upon Virtual Voice express, implied, and apparent authority to market its "free cruise" product, make phone calls to class members, and violate the TCPA.

64.     These calls all began with the same innocuous introduction: "Hi, this is Jennifer with Holiday Cruise Line on a recorded line. Can you hear me okay?" (Consolidated Travel was doing business during the Class Period as Holiday Cruise Line.) There was, however, no "Jennifer." The people who answered these calls were listening to a recording of a professional voice actor reading from a script approved by Consolidated Travel.

65.     Nor was Consolidated Travel out to give anyone a "free cruise." What Consolidated Travel wanted was to "upsell" the people who received Virtual Voice's calls on bigger vacation packages that ran a thousand dollars or more.

66.     The prerecorded voice prompts that Consolidated Travel approved were misleading in several other respects. For example, the prompts stated or indicated that the person receiving the call was a winner or had been selected, or was otherwise being included in a select group, to receive a "free cruise." That was not true. Consolidated Travel was willing to and did sell the Grand Celebration Vacation Package to anyone over 18 with access to a credit or debit card. The prompts stated that the Grand Celebration Vacation Package was "free." That was also untrue. Consolidated Travel charged, at minimum, $118 in "port fees." The prompts stated that the purpose of the telemarketing call was to generate word of mouth advertising. That was untrue. This telemarketing campaign was not intended to and in fact did not generate any word of mouth advertising.

67.     To make these misleading sales calls, Virtual Voice call centers used a type of "soundboard" telemarketing technology called Virtual Voice Technology software ("VVT Software") to play prerecorded voice prompts that were scripted and recorded beforehand.

68.     Use of prerecorded voice was important to Consolidated Travel. While Virtual Voice agents generally spoke English as a second language and thus spoke with a noticeable Indian accent, scripted audio files could be recorded accent-free.

69.     Virtual Voice agents accessed the VVT Software like any other website. After navigating to the site and logging in with a username and password, Virtual Voice agents gained access to a main screen from which they could make and transfer calls. This software was designed to be "idiot proof." There was a dial next button onscreen and, next to that, dozens of voice prompt buttons. Clicking the dial next button would begin a call. Clicking a voice prompt button would play a corresponding prerecorded voice file.

70.     Virtual Voice agents could choose between forty-seven different voice messages on the main screen. The messages vary from an initial greeting ("Hi, this is Jennifer . . .") to inquiring about the caller's interest (". . . wouldn't you be interested in a free cruise to the Bahamas?") to completing a final transfer to CWT ("This looks really good. Congratulations you do qualify for the free cruise . . . But I just want to tell you that there is nothing like a cruise to the Bahamas. So I am going to place you on a brief hold to connect you to the cruise specialist."). The messages also include basic interjections ("Hold on" and "could you repeat that?") and other discrete disclosures ("you should know that I'm not selling anything," "I'm a real person," and "I'm assisted by prerecorded audio.").

71.     When a call was answered, Virtual Voice agents were required to play the first prerecorded prompt ("Hi, this is Jennifer with Holiday Cruise Line . . ."). Virtual Voice agents played this prompt on every call made to class members.

72.     Virtual Voice agents were instructed to click on these various prompts to generate interest in the Grand Celebration Vacation Package, to get these potential customers qualified, and then to transfer the calls to Consolidated Travel and its affiliates' call centers in the U.S.

73.     Virtual Voice agents made multiple calls simultaneously by logging into two different computers at the same time and by wearing two headsets.

74.     Virtual Voice agents did not use their own voices to speak with consumers because they were not authorized to deviate from the preapproved script.

75.     No one consented to receiving calls from Consolidated Travel, Virtual Voice, or any of the Defendants.

76.     By making such unwanted calls, Defendants caused Plaintiffs and each of the Class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited calls, and the monies paid to their carriers for the receipt of such calls.

77.     To redress these injuries, Plaintiffs seek an award of statutory damages to Plaintiffs and the Class under the TCPA, and an order trebling such award of statutory damages, together with costs and reasonable attorneys' fees.

**B.      Consolidated Holdings Is The Alter Ego Of Consolidated Travel**

78.     Consolidated Holdings does not observe corporate formalities with its subsidiaries, Consolidated Travel and Caribbean.

79.     Consolidated Holdings and Consolidated Travel share and comingle assets. Consolidated Travel employees, including Ms. Poole and Ms. Higgins, received compensation for their work as employees or Consolidated Travel from Caribbean.

80.     Consolidated Holdings directed Consolidated Tavel employees to use the same office space and other assets of Caribbean. When Mr. Verrillo and Mr. Lambert decided to end

their telemarketing campaign activities through Caribbean, they started up a new one through Consolidated Travel. The Consolidated Travel campaign—the one at issue in this action—was staffed by the same personnel, working in the same office, sitting at the same desks, and using the same telephone numbers as had been used for the Caribbean campaign.

### C.      Consolidated Travel Did Not Observe Corporate Formalities

81.      There was a complete failure to observe corporate formalities at Consolidated Travel. Ms. Poole has testified that she was named "President" of Consolidated Travel but had no idea whether she was ever actually elected to this position or what her duties were. She also testified she could not recall ever attending a single board meeting. She was never shown Consolidated Travel's finances.

### D.      Verrillo And Lambert Used Consolidated Travel For An Improper Purpose

82.      Mr. Verrillo and Mr. Lambert have a history of engaging in wrongful telemarketing activities, including those owned by Consolidated Holdings, and then dissolving such companies after they incur liability.

83.      For example, in 1999, Mr. Verrillo and Mr. Lambert were named in lawsuits filed by Attorneys Generals of 18 states, including Illinois, for unfair and deceptive practices related to the marketing and sale of cruises. The Court entered a Final Judgment And Consent Decree as to Mr. Verrillo, Mr. Lambert, and their companies. Under the Final Judgment, Mr. Verrillo and Mr. Lambert agreed that they were permanently enjoined in Illinois from, among other things, "Representing to any consumer, directly or by implication, that the consumer is a 'winner' or that the consumer has been 'selected' or is otherwise being included in a select group for receipt of a prize or opportunity unless that is, in fact, true . . . when, in fact, the enterprise is a promotional

scheme designed to make contact with prospective customers, and all . . . of those 'entering' receive the same 'prize.'"

84.     In 2008, the Florida Attorney General commenced an action against another company owned by Mr. Verrillo and Mr. Lambert, Imperial Majesty Cruise Line, LLC ("Imperial") for misleading telemarketing or advertising practices. *See State of Florida v. Imperial Majesty Cruise Line, LLC,* No. 08-54154(18) (Fla. Cir. Ct.). On November 17, 2010, a Florida judge banned Imperial from charging fees above the advertised fare and ordered the company to pay $16 million in fines and restitution. Three years prior to that order, however, Mr. Verrillo and Mr. Lambert had already dissolved Imperial. As a result, Majesty, Mr. Verrillo, and Mr. Lambert avoided paying that amount.

85.     Consolidated Holdings, Mr. Verrillo, and Mr. Lambert have also been the subject of a federal investigation. On March 3, 2015, the Federal Trade Commission, along with ten state attorneys general, commenced an action against a Caribbean for violations of the Telemarketing Act and the FTC's Telemarketing Sales Rules. *See FTC et al. v. Caribbean Cruise Line, Inc. et al.,* No. 15-cv-60423 (S.D. Fla.). The FTC entered into a consent judgment with Caribbean, whereby Caribbean agreed to refrain from further robocalls and to pay $500,000 in order to suspend a civil penalty of $7,730,000.

86.     The   Canadian   Radio-television   and   Telecommunications   Commission ("CRTC")—the FTC's Canadian counterpart—has also investigated Consolidated Holdings. On March 11, 2015, the CRTC fined Consolidated Holdings $200,000 for engaging in violations of Canadian telemarketing law involving calls advertising free cruises. *Notice of Violation: Consolidated Travel Holdings Croup, Inc., CRTC (Mar. 11, 2015), http://www.crtc.gc.ca/ eng/archive/2015/vt150311.htm.* Among the cited violations, the Canadian agency stated that

Consolidated Holdings initiated calls using an automatic dialing-announcing device without obtaining express consent. Based on essentially the same conduct, numerous class actions have been filed against Caribbean Cruise Line since 2012. *See Birchmeier v. Caribbean Cruise Line, Inc.,* 302 F.R.D. 240, 243 (N.D. Ill. 2014) (discussing alleged telemarketing campaign involving political surveys); *see also Jackson v. Caribbean Cruise Line, Inc., et al.,* No. 2:14-02485 (E.D.N.Y.); *Gordon v. Caribbean Cruise Line, Inc., et al.,* No. 1:14-05848 (N.D. Ill.); *Izsak, et al. v. Caribbean Cruise Line, Inc.,* No. 0:14-62231 (S.D. Fla.).

## VII.   CLASS ALLEGATIONS

87.    Plaintiffs bring Count I, as set forth below, on behalf of themselves and as a class action pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the same exact class they already represent in the Illinois action:

> All persons (1) who Virtual Voice Technologies called from December 29, 2014 through March 20, 2016, to market a cruise aboard the Grand Celebration cruise liner sold by Consolidated Travel, and (2) who answered such calls in the state of Illinois.

88.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

89.    Numerosity – Federal Rule of Civil Procedure 23(a)(1).  The members of the Class are so numerous that individual joinder of all Class members is impracticable. The Class consists of hundreds of thousands of people. Tens of thousands of Class members have already been identified in the Illinois Class Action.

90.    Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.      Whether Virtual Voice called Plaintiffs and Class members;

b.      Whether Virtual Voice used the same technology (the VVT Software) to call Plaintiffs and Class members throughout the Class Period;

c.      Whether Virtual Voice agents used the VVT Software to play prerecorded voice to Plaintiffs and Class members;

d.      Whether using the VVT Software to play prerecorded voice constitutes use of "prerecorded voice" within the meaning of the TCPA;

e.      Whether Virtual Voice's conduct violated the TCPA;

f.      Whether Defendants' are personally liable for such violations;

g.      Whether Defendants' violations of the TCPA were willful and knowing; and

h.      Whether Plaintiffs and Class members are entitled to statutory or other forms of monetary relief, and the amounts of such relief.

91.     Typicality – Federal Rule of Civil Procedure 23(a)(3).  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

92.     Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class members they seek to represent; they have retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by the Plaintiffs and their counsel.

93.     Superiority – Federal Rule of Civil Procedure 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive judicial supervision.

## VIII.   CLAIMS ALLEGED

**COUNT I**
**Violation of the TCPA**
**47 U.S.C. § 227(b)(1)(A)–(B)**
**(On behalf of the Class)**

94.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

*95.*     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

96.     As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Class members are entitled to an award of $500.00 in statutory damages for each and every call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

97.     Because Defendants' violations were knowing or willful, Plaintiffs and members of the proposed class are entitled to treble damages of up to $1,500.00 for each and every call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

98.     Plaintiffs and members of the proposed class are also entitled to an award of attorneys' fees and costs.

## IX.    DEMAND FOR JURY TRIAL

99.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Bakov and Hewlett individually and on behalf of the Class, requests that the Court enter an Order:

A.     Certifying the Class as defined above, appointing Plaintiffs as the representatives of the Class, and appointing their counsel as Class Counsel;

B.     Awarding statutory damages;

C.     Awarding of reasonable attorneys' fees and costs; and

D.     Granting such other and further relief that the Court deems reasonable and just.

Dated:  October 3, 2019                 Respectfully submitted,

                                        By: ___*/s/ Scott A. Bursor*_____
                                              Scott A. Bursor

                                        **BURSOR & FISHER, P.A.**
                                        Scott A. Bursor
                                        scott@bursor.com
                                        2665 S. Bayshore Drive, Suite 220
                                        Miami, FL 33133
                                        Telephone: (305) 330-5512
                                        Facsimile: (212) 989-9163

                                        Yitzchak Kopel (*To Be Admitted PHV*)
                                        ykopel@bursor.com
                                        **BURSOR & FISHER, P.A.**
                                        888 Seventh Avenue
                                        New York, NY  10019
                                        Telephone: (646) 837-7150
                                        Facsimile:  (212) 989-9163

                                        Joseph DePalma (*To Be Admitted PHV*)
                                        jdepalma@litedepalma.com
                                        Jeremy Nash (*To Be Admitted PHV*)
                                        jnash@litedepalma.com
                                        **LITE DEPALMA GREENBERG, LLC**
                                        570 Broad Street, Suite 1201
                                        Newark, NJ 07102
                                        Telephone: (973) 623-3000

                                        Katrina Carroll (*To Be Admitted PHV*)
                                        kcarroll@carlsonlynch.com
                                        Kyle A. Shamberg (*To Be Admitted PHV*)
                                        kshamberg@carlsonlynch.com
                                        **CARLSON LYNCH LLP**
                                        111 W. Washington Street, Suite 1240
                                        Chicago, Illinois 60602
                                        Telephone: (312) 750-1265

                                        Jeffrey Grant Brown
                                        jeff@jgbrownlaw.com
                                        **JEFFREY GRANT BROWN, P.C.**
                                        221 North LaSalle Street, Suite 1414
                                        Chicago, IL 60601
                                        Telephone: (312) 789-9700

                                        *Attorneys for Plaintiffs*