## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 0:19-cv-61509-WPD/Snow

ANGEL BAKOV and KINAYA HEWLETT,  **CLASS ACTION**
individually and on behalf of all others
similarly situated

      Plaintiffs,

      v.

CONSOLIDATED TRAVEL HOLDINGS
GROUP, INC., *et al*.,

      Defendants.

_____/

## DEFENDANTS CONSOLIDATED TRAVEL HOLDINGS GROUP, INC.'S AND DANIEL LAMBERT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

Defendants Consolidated Travel Holdings Group, Inc. ("CTHG") and Daniel E. Lambert (collectively, "Defendants"), through counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1) and (12)(b)(6), move this Court for an Order dismissing Plaintiffs Angel Bakov and Kinaya Hewlett's First Amended Class Action Complaint (the "FAC").

## PRELIMINARY STATEMENT

This case, though filed in June 2019, is actually more than four years old. Bakov, as he admits in the FAC, filed the exact same action in the Northern District of Illinois against Defendants and other parties. *See Bakov v. Consolidated World Travel*, Case No. 1:15-cv-02980 (N.D. Ill.) ("*Bakov I*"). Hewlett consolidated her own putative class action, originally filed in the Central District of California, with *Bakov I* in May 2017. Following lengthy discovery, the district court in *Bakov I* then certified a class of Illinois residents who answered a telephone call placed by Virtual Voice Technologies Pvt. Ltd. ("VVT") regarding Defendant Consolidated World Travel, Inc.'s ("CWT") cruise offer that allegedly used a prerecorded voice in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). *See* FAC, Ex. A.

Bakov and Hewlett – two of the three named Plaintiffs in *Bakov I* – are suing in this

Court under the same statute regarding the same telephone calls allegedly made to the same class of persons at issue in *Bakov I*, only this time against additional defendants.  **The exact same telephone calls (actually, a subset of them), are at issue in this lawsuit.**  CTHG and Lambert, both named as defendants in *Bakov I*, were dismissed for lack of personal jurisdiction.  *See* FAC, Ex. B.  However, rather than seek leave to amend the pleadings in *Bakov I* following extensive discovery, Plaintiffs waited, and waited, and waited yet some more.

It was not until June 17, 2019, on the last possible day before all of Bakov's claims were extinguished by the statute of limitations, that Plaintiffs elected to bring suit in this District against these Defendants and others by splitting their TCPA claims and filing this sequel lawsuit, *Bakov II*.  Unable to successfully assert, let alone prove, their contrived alter ego theories in Illinois, Plaintiffs rehash them here on the eve of the running of the statute of limitations and while dueling dispositive motions are pending in *Bakov I*.  Perhaps hedging their bets in the event *Bakov I* does not end in their favor, Plaintiffs have created a spin-off before the first feature has even rolled credits.

The FAC changes the initial complaint minimally, and the same deficiencies still apply.  The claim-splitting doctrine prevents litigants from using the courts in such a manner, and Plaintiffs' "tour" of the federal courts in this manner, after electing to remain and litigate in the Northern District of Illinois against CWT, is untenable.  On the one hand, their theories of liability here require that CTHG and Lambert were the "animating spirits," "central figures," and alter egos of CWT, while, on the other hand, such allegations render CTHG and Lambert CWT's privies for purposes of claim-splitting and preclude split claims against them.

In addition to improper claim-splitting, Plaintiffs' claims also fail and should be dismissed for lack of standing, asserting claims that no longer exist, and failing to state a cause of action against either of these Defendants.  After eliminating the time-barred telephone calls, the two Plaintiffs are suing over three telephone calls that did not disturb their peace or injure them in any manner that the Eleventh Circuit recently clarified Congress sought to protect in enacting the TCPA.  And the asserted bases for liability against CTHG – alter ego – and Lambert – personal liability for merely authorizing CWT to enter into an advertising agreement with VVT – are insufficient and not plausibly stated as a matter of law.

## ARGUMENT

**I.   APPLICABLE LEGAL STANDARDS**

Dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be premised on a facial or factual attack.  *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).   A facial attack challenges the sufficiency of the complaint's allegations.  *See id.*   In contrast, a factual attack questions "the existence of subject matter jurisdiction in fact." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted).   Because a factual attack challenges a court's "power to hear the case," a court "is free to weigh the evidence and satisfy itself as to the existence of [subject matter jurisdiction] . . . .   [T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." *Lawrence*, 919 F.2d at 1529 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).   In evaluating a jurisdictional challenge, the court may consider "matters outside the pleadings, such as testimony and affidavits." *Id.* (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).   Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Furthermore, mere naked assertions are not sufficient. *Id.*   A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).   The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

**II.   PLAINTIFFS HAVE NO ARTICLE III STANDING**

As this case is about *one* telephone call to Bakov, and *two* calls to Hewlett, Plaintiffs have not alleged, and cannot allege, the kind of concrete injury required to maintain this lawsuit. Article III of the U.S. Constitution limits federal courts' jurisdiction to certain cases and

controversies, and requires that a plaintiff establish that he or she has standing to sue. *Case v. Miami Beach Healthcare Grp., Ltd.*, 166 F. Supp. 3d 1315, 1318 (S.D. Fla. 2016) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).  There are three elements required to establish Article III standing: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016)).  The first element, which requires a "concrete injury even in the context of a statutory violation," (*id.* at 1167 (quoting *Spokeo* 136 S. Ct. at 1548-49)), is at issue here.

On the face of the FAC, the statute of limitations narrows the named Plaintiffs' permissible claims to no more than one or two alleged telephone calls (and also narrows the scope of the proposed class).  The statute of limitations for a TCPA claim is four years.  28 U.S.C. § 1658(a).  *See also Solis v. CitiMortgage, Inc.*, 700 Fed. Appx. 965 (11th Cir. 2017).  This action was filed on June 17, 2019, so any claims related to calls occurring prior to June 17, 2015 are barred.  According to the FAC, all but two of the alleged calls to Hewlett, and all but one of the alleged calls to Bakov, occurred prior to June 17, 2015.  *See* FAC at ¶¶ 6, 14.

Plaintiffs do not get the benefit of any tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), or otherwise.  "*American Pipe* does not toll the statute of limitations for named plaintiffs." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 612 (3d Cir. 2018).  *See also China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018); *Chardon v. Fumero Soto*, 462 U.S. 650, 659 (1983).  It is also well established that "the statute of limitations cannot be suspended from running in favor of a person not named as a defendant in [a] class suit," which would be the case here.  *Holland v. JPMorgan Chase Bank, N.A.*, No. 19 CIV. 00233 (PAE), 2019 WL 4054834, *12 (S.D.N.Y. Aug. 28, 2019).

That has significant ramifications for whether the named Plaintiffs have standing to assert their TCPA claims.  The Eleventh Circuit recently held that receiving a single unsolicited text

message – which is considered a call under the TCPA[1] – does *not* generate a "concrete injury in fact that establishes standing to sue in federal court." *Salcedo*, 936 F.3d 1162.  The *Salcedo* court analyzed Eleventh Circuit precedent, the legislative history of the TCPA, and the Supreme Court's decision in *Spokeo* – which concluded that plaintiffs must allege concrete injuries and not rely on mere statutory violations to establish standing – to determine that the "brief, inconsequential annoyance" of a TCPA violation is not one of the "real but intangible harms" that Congress intended for the TCPA to remedy.  *Id.* at 1172.  In other words, a TCPA violation may be "[a]nnoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts." *Id.*  Here, Plaintiffs make two sparse allegations of the "harm" they each suffered as a result of the, for Bakov, one, or for Hewlett, two, calls properly at issue: (1) "[t]hese calls annoyed and frustrated" Plaintiffs;" and (2) "Defendants caused Plaintiffs and each of the Class members . . . the aggravation and nuisance that necessarily accompanies the receipt of unsolicited calls, and the monies paid to their carriers for the receipt of unwanted calls."  FAC at ¶¶ 9, 18, 76. However, as the Eleventh Circuit made clear in *Salcedo*, Plaintiffs' annoyance, frustration, and aggravation are not bases for invoking the jurisdiction of the federal courts.  Thus, Plaintiffs do not have Article III standing and this case must be dismissed.

Hewlett may try to distinguish *Salcedo* because she alleges she received two calls at issue, not one, but *Salcedo* instructs that the quantity of calls is not the determinative question for Article III standing under the TCPA, the quality of the alleged injury is.  In other words, "[t]here is no minimum quantitative limit required to show injury; rather, the focus is on the qualitative nature of the injury, regardless of how small the injury may be."  *Salcedo*, 936 F.3d at 1172 (quoting *Saladin v. City of Milledgeville*, 812 F.2d 687, 691 (11th Cir. 1987)).

Plaintiffs attempt to distinguish themselves from *Salcedo* by emphasizing their aggravation.  *Compare* FAC at ¶¶ 10-12, 18-19 *with Salcedo*, 936 F.3d at 1172 (remarking the plaintiff had "not alleged anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone.").  However, the allegations are still

---

[1] *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016), *as revised* (Feb. 9, 2016); *Ramos v. Hopele of Fort Lauderdale, LLC*, 334 F. Supp. 3d 1262, 1266 (S.D. Fla. 2018) (citing *Murphy v. DCI Biologicals Orlando*, LLC, 797 F.3d 1302, 1305 (11th Cir. 2015)).

insufficient and, moreover, are contradicted by the evidence in *Bakov I*.  Bakov alleges that the June 17, 2015 call was "highly intrusive and upsetting."  FAC at ¶ 10.  In reality, Bakov testified under penalty of perjury that he found that particular telephone call to be "humorous" and went about his day as usual.  Ex. A (Bakov Depo. Tr.) at 118:19-119:10.  Far from upsetting, the call was unmemorable, as Bakov remembers that he was at work when he answered the call, and virtually nothing else.  *See Id.* at 117:20-122:21.  Further, as the *Salcedo* court made clear, Congress's "privacy and nuisance concerns about ***residential*** telemarketing are less clearly applicable" to cellular telephones.  936 F.3d at 1169 (emphasis added).  The call to Bakov's cellular telephone while at work was "[a]nnoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts."  *Salcedo*, 936 F.3d  at 1172.

Hewlett also claims she was working when she received the calls, and that they frustrated her so badly that she began screaming with someone on the line and then purchased a new phone plan to avoid further calls.  *See* FAC at ¶¶ 18-19.  While it may be true that Hewlett engaged in a yelling match with a telemarketer, her phone records clearly indicate it was not in March 2016. In support of her Motion for Class Certification in *Bakov I*, Hewlett submitted a declaration, under penalty of perjury, identifying the two March 2016 telephone calls that are now the subject of *Bakov II*.  She attached a true and correct copy of an excerpt of call detail records for her cellular telephone produced by T-Mobile in response to a subpoena in *Bakov I*.  *See* Ex. B at ¶ 4 and pp. 17-23.  Also attached is a certification from a Custodian of Records for T-Mobile, authenticating the phone records.  Ex. C.  T-Mobile also provided a document titled "Interpreting Call Detail Records" and, relevant to the Court's inquiry here, explaining that the "Duration" column provided a measure of the duration of a call in seconds, and indicating that a call noted with "Abnormal Completion" in the "Completion Code" column was not completed due to "network interruption."  *See* Ex. D at 1.  Hewlett identified one call on March 8, 2016 that was not completed due to network error, and thus had no duration.  *See* Ex. B at 20.  Hewlett identified a second offending call that she claims took place on March 14, 2016, which was connected and lasted for eight seconds.  *Id.* at 21.

First of all, as noted in *Salcedo,* "Congress does not view tying up a phone line for five seconds as a serious intrusion," (936 F.3d at 1173), and the additional *three* seconds here do not

plausibly change that calculus. Second, and more importantly, it strains credulity and is implausible that Hewlett could have become so enraged and spiraled into a yelling match in the span of *just eight seconds*, which then purportedly caused her to change her telephone number. The Court does not have to accept as true such implausible and unsupported assertions. The Court is "is free to weigh the evidence and satisfy itself as to the existence of [subject matter jurisdiction] . . . . [T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." *Lawrence*, 919 F.2d at 1529 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In evaluating a jurisdictional challenge, the court may consider "matters outside the pleadings, such as testimony and affidavits." *Id.* (citation omitted). Moreover, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010). Even if there were a basis to find it plausible that Hewlett was so aggravated by unwanted calls that she paid to change her phone number, she has not plausibly demonstrated that such aggravation was "fairly traceable to the challenged conduct of the defendant[s]." *Spokeo,* 136 S. Ct. at 1543.

Additionally, the differences between a text message and a phone call, for purposes of the Article III analysis, are not material enough to hold differently here than in *Salcedo*. Like a text message, the "chirp, buzz, or blink of a cell phone receiving a" phone call allegedly using a prerecorded voice is similar to a flyer being waived in one's face. More like being presented a flyer than a text message, a cell phone user can affirmatively ignore, or forward to voicemail, a telephone call. Thus, receiving a telephone call that allegedly uses a prerecorded voice does not prevent a user from using other applications, sending or receiving text messages, or even making or receiving other telephone calls while the unwanted call is being received. Even if a user does not ignore or forward a call, and simply lets it ring, the Eleventh Circuit has instructed that "Congress does not view tying up a phone line for five seconds as a serious intrusion." *Salcedo*, 936 F.3d at 1173. As Plaintiffs have alleged no harm other than their annoyance and frustration, their claims should be dismissed for lack of Article III standing.

While Plaintiffs assert that they were charged by their carriers for the alleged calls, (FAC at ¶ 71), discovery in *Bakov I* makes clear that that is utterly false. Both Bavok's billing

statement and Hewlett's deposition testimony make clear that they had unlimited cellular plans and incurred zero charges as a result of these telephone calls. *See* Ex. E (Bakov-CWT-0013); Ex. F (Hewlett Depo. Tr.) at 49:20-51:1. As for "the qualitative nature of the injury" allegedly caused by the telephone calls at issue, (*Salcedo*, 936 F.3d at 1172), neither Plaintiff even remembers the details of those calls. As noted above, Bakov remembers little about the circumstances surrounding the call, and, similarly, Hewlett testified that she has no independent recollection of the phone calls she claims she received. *See* Ex. F (Hewlett Depo. Tr.) at 131:6-132:25. These are hardly the injuries of having "domestic peace shattered" or having one's "cell phone . . . searched, dispossessed, or seized for any length of time" that establish concrete injury. *Salcedo*, 936 F.3d at 1172. As for Plaintiffs' conclusory assertion that they were "annoyed and frustrated" by the less than a handful of calls at issue, (FAC at ¶¶ 9, 14, 71), the Eleventh Circuit has held that such annoyance is "not a basis for invoking the jurisdiction of the federal courts." *Salcedo*, 936 F.3d at 1172. Plaintiffs therefore lack standing.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST DEFENDANTS

### A.   The FAC Should be Dismissed as Improper Claim-Splitting

This suit also should be dismissed because, in filing claims regarding the same telephone calls at issue in the Northern District of Illinois in *Bakov I*, Plaintiffs have engaged in improper claim-splitting. The rule against claim-splitting "flows from the doctrine of *res judicata*" and "makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action." *Pollitz v. Halifax Health*, No. 6:15-CV-450-ORL-37, 2015 WL 4987732, *2 (M.D. Fla. Aug. 19, 2015) (citation omitted). *See also Roca Labs, Inc. v. Century Scis., LLC*, No. 14-60123-CIV, 2014 WL 11775477, *3 (S.D. Fla. June 16, 2014) ("[W]hile *res judicata* applies to suits that have already been adjudicated, claim splitting applies to simultaneously pending suits.").

"It is well settled that a plaintiff 'may not file duplicative complaints in order to expand their legal rights.'" *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (quoting *Greene v. H & R Block E. Enters., Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010); *see also Katz v. Girardi*, 655 F.3d 1212, 1217 (10th Cir. 2011). The claim-splitting doctrine "ensures that a plaintiff may not 'split up his demand and prosecute it by piecemeal, or present

only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.'"  *Id.* (quoting *Stark v. Starr*, 94 U.S. 477, 485 (1876)).  Courts apply a two-factor test when analyzing potential claim-splitting: "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions."  *Vanover*, 857 F.3d at 841–42 (quoting *Khan v. H & R Block E. Enters., Inc.*, No. 11-20335-Civ, 2011 WL 3269440, at *6 (S.D. Fla. July 29, 2011)).  Both requirements are established here as a matter of law.

### i.      *Bakov I* **and This Case Involve the Same Parties and Their Privies**

Given the FAC's allegations, the Defendants – CTHG and Lambert – are both in privity with CWT, the lone defendant in *Bakov I*, and therefore the first requirement for claim-splitting is satisfied.  "Privity exists where the nonparty's interests were represented adequately by the party in the original suit" or where "a party to the original suit is so closely aligned to a nonparty's interest as to be his virtual representative."  *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 156-61 (11th Cir. 1990) (internal quotation marks and citations omitted).  "The Eleventh Circuit has found privity exists in a principal-agent relationship or employee-employer relationship," and privity has also been found to exist "between a controlling shareholder and the corporation itself because the two have sufficient interests in common."  *Roca Labs*, 2014 WL 11775477 at *4 (citing *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502-03 (11th Cir. 1990); *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983)).

A plaintiff may not avoid the rule against claim-splitting where the face of the complaint alleges privity or identity of parties.  *See Bowman v. Coddington*, 517 F. App'x 683, 684 (11th Cir. 2013) (holding rule against splitting causes of action precluded a later-filed suit even though the named defendants were different because the plaintiff himself urged that they were the same entity or "alter ego" of one another); *United States v. Avatar Holdings, Inc.*, 93-281-CIV-FTM-21, 1995 WL 871260, *21 (M.D. Fla. Nov. 22, 1995) (finding that claims against parent company were barred by *res judicata* and noting that the plaintiff cannot argue that a parent company is liable for its subsidiary's actions "under a theory of parent control of its subsidiary and, at the same time, assert that although it is a parent corporation, it is not in privity with the subsidiary for the purpose of res judicata").  The FAC's allegations here are the same with

respect to both CTHG and Lambert, and require dismissal.

### a.     CTHG

There can be no question that CTHG is alleged to be in privity with CWT.  In the FAC, Plaintiffs emphatically allege that CTHG "***Is The Alter Ego of [CWT]***."  FAC at 15 (emphasis added).  Although the allegations are insufficient as a matter of law to state a theory or claim of alter ego liability (as discussed below), they make clear that Plaintiffs seek to impose liability upon CTHG as a privy of CWT, which is not allowed under the claim-splitting doctrine.  Nor are Plaintiffs allowed to assert a claim against CTHG on the basis that it is CWT's corporate parent.

More specifically, Plaintiffs have made the following allegations of alter ego status regarding CTHG (referred to as "Consolidated Holdings" in the FAC) and CWT ("Consolidated Travel"):

- "Defendants each own or control Consolidated Travel or were employed by Consolidated Travel during the relevant time period."  FAC at ¶ 58.

- "Consolidated Holdings Is The Alter Ego Of Consolidated Travel."  *Id.* at 15.

- "Consolidated Holdings does not observe corporate formalities with its subsidiaries, Consolidated Travel and Caribbean."  *Id.* at ¶ 78.

- "Consolidated Holdings and Consolidated Travel share and comingle assets. Consolidated Travel employees, including Ms. Poole and Ms. Higgins, received compensation for their work as employees or Consolidated Travel from Caribbean."  *Id.* at ¶ 79.

- "Consolidated Holdings directed Consolidated Tavel employees to use the same office space and other assets of Caribbean.  When Mr. Verrillo and Mr. Lambert decided to end their telemarketing campaign activities through Caribbean, they started up a new one through Consolidated Travel.  The Consolidated Travel campaign—the one at issue in this action—was staffed by the same personnel, working in the same office, sitting at the same desks, and using the same telephone numbers as had been used for the Caribbean campaign."  *Id.* at ¶ 80.

- "There was a complete failure to observe corporate formalities at Consolidated Travel.  Ms. Poole has testified that she was named 'President' of Consolidated Travel but had no idea whether she was ever actually elected to this position or what her duties were.  She also testified she could not recall ever attending a single board meeting.  She was never shown Consolidated Travel's finances."  *Id.* at ¶ 81.

These allegations affirmatively preclude Plaintiffs' ability to maintain their TCPA claim

against CTHG over the same telephone calls as in *Bakov I* as the purported alter ego of CWT, the lone defendant in *Bakov I*. This is no different from *Bowman*. In *Bowman*, plaintiff filed suit against his former business partner (who plaintiff was already litigating against in state court regarding their old company), arguing that he was a 50% owner of the partner's new company. Plaintiff alleged that the new company "operates out of the same location" as the old company, "and uses the same employees, equipment, telephone numbers, and website." *Bowman*, 517 F. App'x. at 684–85. The district court dismissed the complaint for improper claim-splitting, finding that although the old and new company are different party defendants in name, it is [plaintiff] himself who urges that, in fact, [they] are the same entity." *Id.* at 685. The Eleventh Circuit affirmed the dismissal, and explained that, if plaintiff were successful in the initial suit, "nothing would preclude him from then asserting his claim that [the new company] is the alter ego of [the first company] in post judgment proceedings." *Id.* Just like in *Bowman*, it is Plaintiffs themselves who urge that CTHG and CWT are one in the same under an alter ego theory. Plaintiffs cannot, however, make such allegations and avoid the rule against claim-splitting. Therefore, the claim against CTHG should be dismissed.

Plaintiffs also allege that CTHG "wholly owns non-party [CWT] . . . ." FAC at ¶ 21. This also establishes privy status. "The Eleventh Circuit has held that owners of a corporation can be found to be in privity with the corporation." *Burstein v. Rumball*, No. 06-81064, 2007 WL 9642995, *2 (S.D. Fla. May 21, 2007) (citing *Balbrier v. Austin*, 790 F.2d 1524 (11th Cir. 1986)). This includes a parent corporation that wholly owns a subsidiary. *Id. See also E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1288 (11th Cir. 2004) (noting that certain "close relationships between the parties and nonparties," such as "presidents and sole stockholders by their companies, [or] parent corporations by their subsidiaries" create privity for purposes of claim preclusion); *Bray v. Bank of Am. Corp.*, No. 8:15-CV-2532-T-35CPT, 2018 WL 4567194, *3 (M.D. Fla. Aug. 20, 2018) ("Although Bray added BAC as a defendant in the instant litigation, there is no dispute that BAC is in privity with BANA, as BAC is a parent corporation of BANA."). Especially given Plaintiffs' "alter ego" allegation, "plaintiff[s] cannot argue that a parent company is liable for its subsidiary's actions "under a theory of parent control of its subsidiary and, at the same time, assert that although it is a parent corporation, it is not in privity

with the subsidiary for the purpose of res judicata." *Avatar Holdings*, 1995 WL 871260 at *2.

### b.    Lambert

Lambert, too, is conclusively alleged to be a privy of CWT.  *See* FAC at ¶¶ 23-25 (alleging Lambert "owns or controls" CWT, was one of its two directors, and "ran [its] operations" and "oversaw all departments").  Where an individual defendant is an "employee[] and/or agent[]" of a corporate defendant, then the individual defendant's interests are deemed adequately represented in preceding litigation against the corporate defendant so as to place him or her in privity with the corporate defendant.  *Burstein*, 2007 WL 9642995 at *2.  *See also Echeverria v. Bank of Am.*, N.A., 632 Fed. Appx. 1006, 1008 (11th Cir. 2015) ("A principal-agent relationship is one kind of 'substantive legal relationship' that establishes privity for claim preclusion purposes."); *Barclay v. Lowe*, 131 F. App'x 778, 779 (2d Cir. 2005) ("All defendants are employees of Attica and their interests are adequately represented by those in the first suit who are vested with the authority of representation.").

"Most other federal circuits have concluded that employer-employee or principal-agent relationships may ground a claim preclusion defense, regardless which party to the relationship was first sued."  *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502 (11th Cir. 1990) (citing *Fiumara v. Fireman's Fund Ins. Co.,* 746 F.2d 87, 92 (1st Cir.1984); *Lambert v. Conrad,* 536 F.2d 1183, 1186 (7th Cir. 1976); *Lober v. Moore,* 417 F.2d 714 (D.C.Cir. 1969); *Spector v. El Ranco, Inc.,* 263 F.2d 143, 145 (9th Cir. 1959).  Although directors are not necessarily in privity with their corporations solely as a result of their titles as directors, they are privies when a plaintiff is seeking damages "only under the theory of respondeat superior or vicarious liability." *Id.* at 1502-03.   Here, Plaintiffs do not allege that Lambert was the maker or initiator of the calls at issue.  At most, they allege that the "ran the operations of [CWT], oversaw all departments (including marketing, fulfillment, and customer service)," and "authorized the illegal telemarketing campaign at issue in this lawsuit . . . ."  FAC at ¶¶ 25-26. They thus seek to hold Lambert liable for the actions of another by the imposition of vicarious liability.  This theory of recovery clearly makes Lambert a privy of CWT for purposes of the claim-splitting analysis, and the individual claims against Lambert must be dismissed.  Moreover, to the extent Plaintiffs attempt to allege that he was one of "the controlling forces behind [CWT]," that, too, places him

12

within privity with CWT, once again satisfying the first factor of the claim-splitting analysis. *Roca Labs*, 2014 WL 11775477 at *4. And claim-splitting is also implicated by Plaintiff's "everything-but-the-kitchen-sink" allegation that Lambert also "owns or controls, or has owned or controlled, numerous business in the marketing and hospitality industries, including Consolidated Holdings [CTHG] [and] Consolidated Travel [CWT] . . . ." FAC at ¶ 29. As discussed above, ownership status is also sufficient to render Lambert a privy of CWT. *See Pemco Aeroplex*, 383 F.3d at 1288; *Burstein*, 2007 WL 9642995 at *2.

### ii.   *Bakov I* and This Case Arise from the Same Series of Transactions

There can be no question that the second factor of the claim-splitting analysis, "whether [*Bakov I* and this case] arise from the same transaction or series of transactions," (*Vanover*, 857 F.3d at 841-42), is also satisfied. "Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Id.* at 842. Plaintiffs concede that they are asserting the same TCPA claim on behalf of the same persons over the same telephone calls at issue in the Northern District of Illinois in *Bakov I. See* FAC at ¶ 57 ("This lawsuit asserts the same claim on behalf of the same Class against additional parties who authorized, directed, or participated in the illegal telemarketing campaign at issue in the Illinois Class Action."). Accordingly, as both factors of the claim-splitting analysis have been satisfied, CTHG and Lambert should be dismissed from the case. As privies, they are within the scope of the claim-splitting doctrine.

### iii.   Plaintiffs' Personal Jurisdiction Excuse Is Unavailing

In the FAC, Plaintiffs assert for the first time that, "[b]efore [sic] the Northern District of Illinois determined Defendants [CTHG] [and] Mr. Lambert . . . are not subject to its jurisdiction, no binding judgment was or could have been entered against them by that Court." FAC at ¶ 58. Plaintiffs appear to be laying the groundwork for the argument that because the court in *Bakov I* concluded Plaintiffs had not sufficiently established that court's personal jurisdiction over CTHG and Lambert, the claim-splitting doctrine cannot apply.

The doctrine, however, is concerned with "the improper splitting of claims which could have been brought in [an] earlier . . . lawsuit." *Vanover*, 857 F.3d at 841 (citing *Katz*, 655 F.3d at 1214). The court in *Bakov I* issued its personal jurisdiction ruling on August 4, 2016, which

13

was early in the case and upon review of the initial complaints filed by Bakov and another named plaintiff. *See generally* FAC, Ex. B. Plaintiffs filed subsequent complaints in the case and, more importantly, sought and were granted permission to file a motion to yet again amend their class complaint following the close of fact discovery and immediately before the filing of their motion for class certification. *See* Ex. G. On July 17, 2018, they ultimately elected not to seek leave to file an amended pleading. *See* Ex. H.

There is no reason why Plaintiffs could not have sought leave then (or at any earlier point in the case) to add CTHG or Lambert as defendants and attempt to argue, based on the facts developed in discovery, that they could now establish personal jurisdiction through specific personal jurisdiction or imputation of jurisdictional contacts on an "alter ego" or other theory. This is especially the case when the allegations against CTHG and Lambert in the FAC are all drawn from discovery adduced in *Bakov I* following the *Bakov I* court's initial ruling or from information that was publicly available long before July 17, 2018. While Defendants by no means concede that Plaintiffs would have succeeded in that effort, Plaintiffs certainly could have made the attempt in *Bakov I* based on the same allegations – which are drawn from discovery conducted in *Bakov I* – that they make in this case. Their intentional decision not to do so in *Bakov I* precludes them from engaging in that exercise in a second lawsuit, because they could have brought these claims in *Bakov I*. "To rule otherwise would defeat the objective of the claim-splitting doctrine to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket." *Vanover*, 857 F.3d at 843.

### B.     The FAC Fails to State a TCPA Claim against CTHG or Lambert

Even if the Court finds that Plaintiffs have standing to assert their TCPA claims, and their claim against CTHG and Lambert are not barred by the claim-splitting doctrine, the claims should still be dismissed for failure to state a cause of action. Plaintiffs fail to allege facts sufficient to state any plausible basis for liability under the TCPA against CTHG or Lambert.

#### i.     CTHG

The sole asserted basis for liability against CTHG is as "The Alter Ego of Consolidated Travel [CWT]." FAC at 15. Plaintiffs allege a number of purported facts aimed at plausibly

stating such alter ego status, (*id.* at ¶¶ 78-86), but fall far short of asserting any plausible claim for relief against CTHG. Florida law, which is the law of CTHG's domicile and state of incorporation, has "a very strict test for piercing the corporate veil to collect from a shareholder." *John Daly Enters., LLC v. Hippo Golf Co., Inc.,* 646 F. Supp. 2d 1347, 1353 (S.D. Fla. 2009). As the Eleventh Circuit stated,

> [i]t is black letter law in Florida that to disregard this corporate fiction and hold the corporation's owners liable—to "pierce the corporate veil"—the plaintiff must prove that:
>
> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama,* 633 F.3d 1330, 1349 (11th Cir. 2011).

Rather than allege specific facts that plausibly state any of the above elements, Plaintiffs rely upon conclusory assertions and a jumbled patchwork of commonplace, permissible, and innocuous sharing of affiliated corporate resources. *See* FAC at ¶¶ 78-80. Furthermore, it is unclear how the alleged points of connection between two different companies alleged to be subsidiaries of CTHG – CWT and Caribbean Cruise Line, Inc. ("CCL") – state a plausible claim that CTHG is CWT's alter ego. The alleged fact that CWT employees – not CTHG employees – "received compensation for their work as employees o[f] [CWT] from [CCL]," (*id.* at ¶ 79), a company not named as a defendant, has no bearing on CTHG's purported status as the alter ego of CWT. Equally irrelevant to ***CTHG's*** alleged "alter ego" status is the allegation CWT and CCL – not CTHG – used some of the same employees and resources. *See id.* at ¶ 80. Likewise, the allegations that CWT did not observe corporate formalities, (*id.* at ¶ 81), even if they were sufficient to plausibly assert that contention (they are not), again has no bearing on establishing that CTHG was "The Alter Ego of Consolidated Travel [CWT]." *Id.* at 15.

Even where the facts show that a parent company and its subsidiary "share officers, that

[the parent] caused [the subsidiary] to be incorporated, and that [the subsidiary] is a division of [the parent]," that would be "insufficient to establish that the two entities are alter egos that should be treated interchangeably for the purposes of liability." *Beck v. Royale Harbour of N. Palm Beach Condo. Ass'n, Inc.*, No. 14-80611-CIV, 2014 WL 4782962, *3 (S.D. Fla. Sept. 3, 2014). *See also*, *e.g.*, *Walton Const. Co., LLC v. Corus Bank*, No. 4:10-CV-137-SPM-WCS, 2011 WL 2938366, *3 (N.D. Fla. July 21, 2011) (holding that "mere dominion and control of a parent over a subsidiary does not support the alter-ego theory of liability," and neither does "co-mingled communication, employee identification and the use of [the subsidiary's] employees to perform the [parent's] tasks"). Instead, "[t]here must be more significant ties as to financing, operations, corporate formalities, and/or the other relevant factors" to plausibly allege alter ego status. *Beck*, 2014 WL 4782962 at *3. *See also Walton Const.*, 2011 WL 2938366 at *3 (ruling that without "persuasive factual allegations showing that the Starwood Defendants created Funding and used the corporate structure for the perpetration of fraud, or a similar injustice or wrongdoing, piercing the corporate veil of the Starwood Defendants is not warranted").

Plaintiffs fail to allege any specific facts showing that (1) CTHG exercises domination and complete control over CWT, (2) such control was used fraudulently or for an improper purpose against Plaintiffs, and (3) as a result of such control Plaintiffs were injured. "Plaintiff[s] provide[ ] no specific allegations to suggest that [CTHG] dominated and controlled [CWT] to a sufficient extent or that the corporate form was used fraudulently or for an improper purpose." *B & E Gibson Enters. Inc. v. Darngavil Enters. LLC*, No. 6:12-CV-1865-ORL-31, 2013 WL 1969288, *3 (M.D. Fla. May 13, 2013). *See also*, *e.g.*, *Lobegeiger v. Celebrity Cruises, Inc.*, No. 11-21620-CIV, 2011 WL 3703329, *15 (S.D. Fla. Aug. 23, 2011) (similar).

Indeed, on the requisite element of use of the corporate form – presumably CWT's – for a fraudulent or improper purpose, the allegations are all against Defendants James Verillo and Lambert, but even then, ***no fraudulent or improper purpose is ever stated***. *See* FAC at ¶¶ 82-86. The FAC alleges that "Mr. Verillo and Mr. Lambert have a history of engaging in wrongful telemarketing activities, including those owned by Consolidated Holdings, and then dissolving such companies after they incur liability." *Id.* at ¶ 82. From that conclusory assertion, however, Plaintiffs leave it to reader to guess how (and why they believe) CTHG used CWT's corporate

16

form for a fraudulent or improper purpose.  This is the exact same stumbling block that Plaintiffs faced when they unsuccessfully argued that CWT's jurisdictional contacts could be imputed to CTHG under an alter ego theory.  *See id.*, Ex. B at 6-7.  While Plaintiffs state in conclusory terms that CWT's corporate form has been used for a fraudulent or improper purpose, the FAC is lacking any of the required specifics.  On this element, "the impropriety required to pierce the corporate veil is present only in cases in which the corporation was a mere device or sham to accomplish some improper goal, such as misleading or defrauding creditors, hiding assets, evading the requirements of a statute or some analogous betrayal of trust."  8A Fla. Jur. 2d *Business Relationships* § 15.  Nothing of the sort is even hinted at in the FAC, and certainly not in any manner that specifically injured Plaintiffs, as is required.

### ii.      Lambert

Finally, Plaintiffs fails to state any facts in the FAC that would suffice to state a plausible claim for personal liability under the TCPA against Lambert.  At most, Plaintiffs allege that Lambert "authorized the illegal telemarketing campaign at issue in this lawsuit by, among other things, authorizing the agreement between [CWT] and [VVT] and receiving reporting regarding call volume and other similar matters."  FAC at ¶ 32.  That allegation is too conclusory, vague, and insufficient to state a claim for personal liability.

"[I]n the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents. . . .  A corporate employee typically acts on behalf of the corporation, not its owner or officer."  *Meyer v. Holley*, 537 U.S. 280, 285 & 289 (2003).  The courts have specified that "the direct commission or authorization of wrongful acts by the corporate officer" is required to impose personal liability under the TCPA.  *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-CIV-SCOLA, 2013 WL 1283885, *4 (S.D. Fla. Mar. 27, 2013).[2]  If an

---

[2] *See also Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001) ("[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved"); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2015 WL 3644598, *3 (S.D. Fla. June 10, 2015) ("[I]n every known case holding a corporate officer personally liable under the TCPA, the officer had either directly committed or knowingly authorized the corporation's wrongful acts.").  *Cf. Savanna Group, Inc. v. Trynex, Inc.*, No. 10 C

authorization is the basis of personal liability, as is the case here, such authorization must be coupled with knowledge that the conduct being authorized violates the TCPA.  *See Physicians Healthsource*, 2015 WL 3644598 at *3 (requiring knowing authorization of wrongful acts). Thus, "[i]n order for [Lambert's] conduct to rise to that level here, the Court finds Plaintiff[s] would have to show that [Lambert] failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA, or that he authorized or personally engaged in conduct that ***clearly*** violated the TCPA."  *Mais*, 2013 WL 1283885 at *4 (emphasis added).

Judge Scola's decision in *Mais* is directly on point.  In *Mais*, Jack W. Brown was named a defendant in a putative TCPA class action.  Plaintiff alleged Brown was the "vice president and 20% owner of" Gulf Coast, the corporate defendant, and the person who "controlled the policies and practices of Gulf Coast regarding the TCPA and who authorized those policies and practices complained of herein."  *Id.* at *1 & 3 (quoting plaintiff's complaint) (brackets omitted). Although the case was at the summary judgment stage, the court pointed out that the complaint's "scant factual allegations as to [Brown's] role in the conduct complained of" precluded Plaintiff from obtaining "any relief from Brown as a matter of law."  *Id.* at *3.  Alternatively, the court awarded Brown summary judgment on the merits because, "[w]hile Brown is the person who allegedly authorized the use of Gulf Coast's dialer, there is no evidence of plainly violative conduct by Brown personally; indeed, there is no evidence that he had anything personally to do with the calls made to Plaintiff or any putative class member."  *Id.* at *4 (internal quotation omitted).

Similarly, here the FAC does not allege facts sufficient to plausibly claim that Lambert "failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA, or that he authorized or personally engaged in conduct that clearly violated the TCPA."  *Id.* The *only* conduct by Lambert alleged in the FAC that is relevant to the TCPA claim is the vague allegation that he "authoriz[ed] the agreement between [CWT] and [VVT] and receiv[ed] reporting regarding call volume and other similar matters."  FAC at ¶ 32.  To begin

---

7995, 2013 WL 4734004, *8 (N.D. Ill. Sept. 3, 2013) ("[P]remising Truan's liability solely on his status as the head of marketing would run afoul of the principle that a corporate officer may not be liable for corporate acts based purely on his or her status in the corporation.").

with, it is unclear how the passive activity of merely receiving reports about telephone calls that have been made establishes the requisite personal participation in or authorization of allegedly unlawful conduct.

As for the conclusory assertion that Lambert authorized an agreement between CWT and VVT, the company that placed the telephone calls at issue, that is insufficient as a matter of law. The same conclusory allegation is generally made against Defendants Verillo and Donna Higgins.  *See* FAC at ¶¶ 26 & 40.  Significantly, the FAC does not allege that Lambert specifically and knowingly authorized ***any particular conduct by VVT***, such as the conduct at issue in this lawsuit – the alleged use of a prerecorded voice – or conduct that Lambert knew was in violation of the TCPA.   Corporate officers (and employees) routinely authorize their companies' entry into agreements.  That act on behalf of a corporation, alone, is hardly a basis upon which ***personal*** liability for a corporation's violation of a federal statute can be imposed. *Cf. Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc*., No. 14 C 5602, 2019 WL 527497, *7 (N.D. Ill. Feb. 11, 2019) (rejecting argument that defendant "should be held liable because 'the sending of the faxes was at the core of Med-Care's business,' and Silverman must have exercised direct authorization and control over it as the president of the company," as "a veiled attempt to impose vicarious liability on Silverman" that fails to "establish his 'direct participation or authorization'") (quoting *Physicians Healthsource*, 324 F. Supp. 3d at 983); *Mais*, 2013 WL 1283885 at *4 ("Corporate officers are generally not liable merely because the corporation has violated the law, and this Court is not going to leave the door wide open for such liability here.").  *See also Lamonica v. Safe Hurricane Shutters, Inc*., 711 F.3d 1299, 1313 (11th Cir. 2013) ("[I]ndividuals ordinarily are shielded from personal liability when they do business in a corporate form, and . . . it should not lightly be inferred that Congress intended to disregard this shield.").

In fact, the Third Circuit, based largely on Eleventh Circuit case law, has recently questioned the "direct participation or authorization" standard for personal liability under the TCPA, and has suggested that officers should rarely be held liable under the TCPA if acting in their corporate, rather than personal, capacities.  *See City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 159-161 (3d Cir. 2018) (citing, *e.g.*, *Lamonica*, 711 F.3d at 1313;

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015)).  The Third Circuit proposed an analysis that asks "whether the relationship between the corporation and the individual defendant was 'eccentric under accepted norms' of corporate conduct such that faxes were really sent on behalf of the individual instead of the entity."  *Id.* at 160 (quoting *United States v. Bestfoods*, 524 U.S. 51, 72 (1998)).   A corporate officer authorizing his company's entry into an agreement is hardly "eccentric under accepted norms."

Regardless, even under the "direct participation or authorization" standard, the mere allegation that Lambert authorized CWT to enter into an agreement whereby another company was hired to engage in telemarketing, without anything more, is insufficient to plausibly render Lambert the "guiding spirit[ ]" and the "central figure[ ] behind the [alleged] TCPA violations" or to plausibly state that he "directly controlled and authorized" the alleged misconduct.  *Am. Blastfax*, 164 F. Supp. 2d at 898.  No plausible claim for personal liability is stated against Lambert, and he therefore should be dismissed from this case.

## CONCLUSION

For the foregoing reasons, Defendants Consolidated Travel Holdings Group, Inc. ("CTHG") and Daniel E. Lambert (together referred to as "Defendants") request that the Court enter an order dismissing with prejudice all claims asserted against them and granting such further and other relief as the Court deems just and proper.

Dated: October 17, 2019                            GREENSPOON MARDER LLP


                                                   */s/ Roy Taub*
                                                   JEFFREY A. BACKMAN, ESQ.
                                                   (Fla. Bar No. 0662501)
                                                   jeffrey.backman@gmlaw.com
                                                   RICHARD W. EPSTEIN, ESQ.
                                                   (Fla. Bar No. 229091)
                                                   richard.epstein@gmlaw.com
                                                   ROY TAUB, ESQ.
                                                   (Fla. Bar No. 116263)
                                                   roy.taub@gmlaw.com
                                                   GREGG I. STROCK , ESQ.
                                                   (Fla. Bar No. 1010140)
                                                   200 East Broward Blvd., Suite 1800

Fort Lauderdale, Florida 33301
954-491-1120 (Telephone)
954-343-6958 (Facsimile)

*Attorneys for Defendants*
*Consolidated Travel Holdings Group, Inc.*
*and Daniel E. Lambert*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have filed the foregoing with the Clerk of Court via CM/ECF on October 17, 2019.  I further certify that any party that enters an appearance in this matter will receive a copy of this document via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notice of Electronic Filing.

*/s/ Roy Taub*
ROY TAUB