**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:19-cv-61509-WPD/Snow

| | |
|---|---|
| ANGEL BAKOV and KINAYA HEWLETT, individually and on behalf of all others similarly situated | **CLASS ACTION** |
| Plaintiffs, | |
| v. | |
| CONSOLIDATED TRAVEL HOLDINGS GROUP, INC., *et al.*, | |
| Defendants. _____/ | |

**DEFENDANTS JAMES VERRILLO, JENNIFER POOLE, AND DONNA HIGGINS'S MOTION TO QUASH SERVICE AND DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Defendants James Verrillo, Jennifer Poole, and Donna Higgins (collectively, "Defendants"), through counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), (12)(b)(6), and 4(m), move this Court for an Order quashing service and dismissing Plaintiffs Angel Bakov and Kinaya Hewlett's (collectively "Plaintiffs") First Amended Class Action Complaint (the "FAC").

**PRELIMINARY STATEMENT**

Service upon a defendant is an essential element of due process and the jurisdiction of a district court. Plaintiffs have completely disregarded this essential element, and the rules of civil procedure and Florida law related to service of process, by not properly or timely effectuating service on Defendants. Plaintiffs exerted minimal effort in attempting to serve Defendants, at wrong addresses for Higgins and Verrillo, and never attempted to locate alternative addresses. After trying just five times, at the same location, within the same week or so, Plaintiffs waited around for over two months and then attempted to serve the Florida Secretary of State without strictly complying with Florida law. Aside from being improper, service on the Florida Secretary of State was untimely under Federal Rule of Civil Procedure 4(m), and Plaintiffs have not sought an extension of time despite being put on notice of the expiration of the time period

for service at least two times. Plaintiffs have ignored Rule 4(m) and sections 48.181 and 48.161 of the Florida Statutes in their attempts to serve Defendants through the Florida Secretary of State. These improper service attempts have been a continuation of Plaintiffs' indifference for the requirements of service, as they previously ignored Rule 4(m) and sections 49.011, 49.021, and 49.041-49.061 of the Florida Statutes when they sought to serve Defendants by publication. *See* ECF 12. Plaintiffs withdrew their request only after they were informed that such service is not allowed for this action and that their request did not satisfy essential requirements for service by publication. For all of these reasons, service must be quashed and the claims against Defendants should be dismissed.

If for some reason the Court does not quash service and grant dismissal under Rule 12(b)(5), dismissal is still appropriate under Rule 12(b)(1) and 12(b)(6) based on arguments similar to those raised in the Motion to Dismiss filed by Defendants Consolidated Travel Holdings Group, Inc. ("CTHG") and Daniel Lambert. ECF 19. As explained there, this case is a spinoff of a still pending case in the Northern District of Illinois, *Bakov v. Consolidated World Travel*, Case No. 1:15-cv-02980 (N.D. Ill.) ("*Bakov I*"), where the district court certified a class of Illinois residents who answered a telephone call placed by Virtual Voice Technologies Pvt. Ltd. ("VVT") regarding Defendant Consolidated World Travel, Inc.'s ("CWT") cruise offer that allegedly used a prerecorded voice in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Plaintiffs are suing in this Court under the same statute regarding the same telephone calls allegedly made to the same class of persons at issue in *Bakov I*, only this time against Defendants, who were dismissed for lack of personal jurisdiction in *Bakov I*. *See* FAC, Ex. B.

For the reasons explained below, the FAC should be dismissed because Plaintiffs' theories of liability here require that Defendants were the "animating spirits" or "central figures" of CWT, while, on the other hand, such allegations render Defendants privies for purposes of claim-splitting and preclude split claims against them. Plaintiffs' claims also fail and should be dismissed for lack of standing and failing to state a cause of action against Defendants. The asserted bases for liability against Defendants – personal liability for minimal conduct related to the advertising campaign – are insufficient and not plausibly stated as a matter of law.

## ARGUMENT

### I. APPLICABLE LEGAL STANDARDS

A plaintiff must properly serve process for the court to have personal jurisdiction over the defendant. *Thorpe v. Dumas*, No. 19-10089, 2019 WL 4447248, at *1 (11th Cir. Sept. 17, 2019). Federal Rule of Civil Procedure 12(b)(5) allows a defendant to challenge the sufficiency of service of the Complaint and Summons. *See* Fed. R. Civ. P. 12(b)(5). It is Plaintiffs that bear the burden of proving that service of process was proper. *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design*, 635 F.2d 434, 435 (5th Cir. 1981).

Dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be premised on a facial or factual attack. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). A facial attack challenges the sufficiency of the complaint's allegations. *See id.* In contrast, a factual attack questions "the existence of subject matter jurisdiction in fact." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted). Because a factual attack challenges a court's "power to hear the case," a court may consider "matters outside the pleadings, such as testimony and affidavits," and "is free to weigh the evidence and satisfy itself as to the existence of [subject matter jurisdiction] . . . . [T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." *Lawrence*, 919 F.2d at 1529 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## II. PLAINTIFFS HAVE NO ARTICLE III STANDING

To avoid burdening the Court with repetition of the same arguments, these Defendants join in and incorporate by reference as if fully stated herein the arguments made by Defendants CTHG and Lambert that Plaintiffs lack standing to assert their respective TCPA claims due to their failure to allege the requisite concrete injury, per the Eleventh Circuit's recent decision in *Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019). Those arguments appear in Section II to the CTHG and Lambert Motion to Dismiss (ECF 19) on pages 3-8.[1]

## III. DEFENDANTS WERE NOT SERVED WITH PROCESS

Federal Rule of Civil Procedure 12(b)(5) provides that a defendant may be dismissed from a case for insufficient service of process. Federal Rule of Civil Procedure 4(m) also provides that a defendant may be dismissed if he or she is not served with process within 90 days from the filing of the complaint.

Rule 4(e)(1) permits service in accordance with the "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Plaintiffs did not comply with Florida requirements. As Plaintiffs stated, they attempted to serve Defendants by substitute service upon "the Florida Secretary of State in accordance with Chapter 48.181, Florida Statutes." ECF 28 at 2 (citing ECF 22 (proofs of service to that effect)). Fla. Stat. § 48.181 sets forth how individuals such as Defendants may be served by substitute service in Florida, and provides, in relevant part, that

> [t]he acceptance by any person or persons, individually or associated together as a copartnership or any other form or type of association, who are residents of any other state or country, ***and all foreign corporations***, ***and any person who is a resident of the state and who subsequently becomes a nonresident of the state or conceals his or her whereabouts***, of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, constitutes an appointment by the persons and foreign corporations of the Secretary of State of the state as their agent on whom all process in any action or proceeding against them, or any of them, arising out of any transaction or operation connected with or incidental to the business or business venture may be served.

---

[1] Defendants note that an entirely different panel of the Eleventh Circuit recently construed *Salcedo* to apply only to text messages. *See Cordoba v. DIRECTV, LLC*, No. 18-12077, 2019 WL 6044305, *6 (11th Cir. Nov. 15, 2019). As the *Salcedo* court clearly was addressing the less intrusive nature of "calls to cell phones" and "cell phone calls" outside the house, and not just text messages, (936 F.3d at 1170), such a narrow construction of *Salcedo* is unwarranted.

(Emphasis added).

### A.     **Plaintiffs Were Not Reasonably Diligent**

"Section 48.181 of Florida Statutes allows a plaintiff to serve the Florida Secretary of State on behalf of the defendant in limited circumstances," (*Taverna Opa Trademark Corp. v. Ismail*, No. 08-20776-CIV, 2009 WL 1220513, at *1 (S.D. Fla. Apr. 30, 2009)), and requires that "plaintiff[s] must demonstrate the exercise of due diligence in attempting to locate the defendant[s]." *DuBois v. Butler*, 901 So.2d 1029, 1030 (Fla. 4th DCA 2005) (quoting *Wiggam v. Bamford*, 562 So.2d 389, 391 (Fla. 4th DCA 1990)).  The test for due diligence is "whether the [plaintiffs] reasonably employed knowledge at [their] command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire the information necessary to enable [them] to effect personal service on the defendant[s]." *Wiggam*, 562 So.2d at 391 (quoting *Grammer v. Grammer*, 80 So.2d 457, 460-61 (Fla. 1955)).

But very little effort was exerted by Plaintiffs here.  In the ninety (90) days that Plaintiff's had to serve Defendants, they made just five (5) attempts to serve each Defendant in a period of one week or so in July 2019.  They made no attempts in June.  They made no attempts in August.  They made no attempts in September.  They made no attempts to search for alternative addresses for any of the Defendants.  Plaintiffs also attempted to serve both Verrillo and Higgins at wrong or secondary addresses.  *See* ECF 28-1 at 12-19; Exs. 1-3 (Declarations of Verrillo, Higgins, and Poole).  Notably, the process server informed Plaintiffs on July 18, 2019 that the Donna Higgins previously located at the same address Plaintiff listed on the Summons issued to Higgins in *Bakov I,* (*see* Ex. 4), was now likely located in North Carolina.  *See* ECF 28-1 at 12.  Still, Plaintiffs attempted service three more times at the wrong address that Higgins has never resided at and then accused her of concealing her whereabouts.  *See* ECF 28 at 2.  In fact, Plaintiffs made no effort to locate her at all.  Similarly, Plaintiffs attempted service on Verrillo at a vacation home rather than his known primary residence and publicly listed homestead, and then accused him of concealing his whereabouts without any attempts to locate Verrillo at an alternative address.  *See* ECF 28-1 at 18-19; Ex. 1 at 5.  While Plaintiffs had the correct address for Poole, they only attempted service five times within the same week, during the day, when Poole was not home, and then accused her of evading service.  *See* ECF 28-1 at 15-16; Ex. 3.  The insufficient and limited nature of these attempts alone defeats Plaintiffs' entitlement to substitute service upon the Secretary of State and renders such service ineffective.  *Cf. Amerilife Grp., LLC v.*

*Amlife Fin., LLC*, No. 8:17-CV-2453-T-35TBM, 2017 WL 8948391, *2 (M.D. Fla. Dec. 22, 2017) (denying entry of default where "Plaintiff[s] fails to allege, let alone demonstrate, the reasonable diligence required before resorting to substitute service of process . . . . Of note, Plaintiff[s] [do] not address what attempts, if any, were made to locate the correct address of the [Defendants] or to contact or locate the [Defendants] prior to utilizing substituted service.").

Indeed, in *Safari Programs, Inc. v. Quercia, Inc*., No. 1:15-CV-22132, 2016 WL 4174365, *1 (S.D. Fla. Aug. 8, 2016), the court found that the slightly greater effort exhibited there was insufficient to "reach the level of due diligence required before substitute service is supported under Florida law." 2016 WL 4174365 at *2. In that case, the court chided the plaintiffs for failing to "follow the obvious and available leads," such as further inquiring about the Defendant's location or consulting public records. *Id. See also*, *e.g.*, *Wiggam v. Bamford*, 562 So. 2d 389, 392 (Fla. 4th DCA 1990) (affirming denial of leave to serve by substitute service for failure to demonstrate due diligence to serve otherwise).

More than the mere conclusory assertion that Defendants are concealing their whereabouts is required. Florida courts have ruled that even "[t]he failure . . . to locate the defendant at three addresses furnished by the plaintiff is not enough to establish concealment," and insist that "[t]he record . . . show by affidavit or otherwise that sufficient search and inquiry was actually made to ascertain that the defendant was concealing his whereabouts." *Bird v. Int'l Graphics, Inc.*, 362 So.2d 316, 317 (Fla. 3d DCA 1978) (reversing order denying motion to vacate final judgment). Likewise, in words that apply in full to Plaintiffs' repeated efforts to serve Defendants here, "[i]f failure to locate the defendant at three addresses is not sufficient to establish concealment, then how much more effective are six or seven such attempts at one address?" *Robinson v. Cornelius*, 377 So. 2d 776, 778 (Fla. 4th DCA 1979) (reversing order permitting substitute service of defendant for failing to "even minimally sustain the burden imposed by law of diligent search and inquiry sufficient to justify substituted service of process"). Similarly here, Plaintiffs failed to demonstrate the "reasonable diligence" to personally serve Defendants required by Florida law before substitute service is proper.

**B.** Plaintiffs Did Not Strictly Comply With Fla. Stat. §§ 48.161 and 48.181

Even if Plaintiffs had made reasonably diligent efforts to serve Defendants (which is denied), substitute service still was not valid or effective. In attempting to effect service through substitute service upon the Secretary of State, Plaintiffs were also required to comply with

6

Florida's generally applicable requirements for substitute service codified at Fla. Stat. § 48.161. "When substituted service is made under section 48.181, the requirements of section 48.161 also apply." *Jupiter House, LLC v. Deutsche Bank Nat. Tr. Co.*, 198 So. 3d 1122, 1124 (Fla. 4th DCA 2016). *See also Amerilife*, 2017 WL 8948391 at *2 ("Further, § 48.181 must be read together with § 48.161 in order for service to be effective. To perfect substituted service under § 48.181, service must be had under one of the methods in § 48.161.") (internal citation omitted). State and federal court decisions to this effect are legion.[2]

In an often-cited decision, the Middle District of Florida set forth what a plaintiff must do to comply with the requirements of Section 48.161:

> To effectuate proper service of process pursuant to Florida Statutes Section 48.161, a plaintiff must: (1) allege facts in the complaint that bring the defendant within the purview of the substitute service statute (e.g., that the defendant is a nonresident subject to the court's jurisdiction who cannot be located despite due diligence or that the defendant is actively concealing his or her whereabouts); (2) serve the Secretary of State by providing him or her (or their delegate) with a copy of the summons and complaint; (3) pay the requisite fee to the Secretary of State; (4) provide Notice of service upon the Secretary of State to the defendant by sending him or her a copy of the summons and the complaint by registered or certified mail; (5) file the registered or certified mail return receipt; and (6) file an affidavit of compliance on or before the return date of the process.

*EHR Aviation*, 2011 WL 46119 at *1 (citing Fla. Stat. § 48.161(1)).

"Since the lack of personal service of process implicates due process concerns, the plaintiff must strictly comply with the statutory requirements." *Safari Programs*, 2016 WL 4174365 at *1 (internal quotation omitted). *See also*, *e.g.*, *Wise v. Warner*, 932 So. 2d 591, 592-93 (Fla. 5th DCA 2006) ("Because the statute allowing substituted service is an exception to the general rule requiring a defendant to be personally served, due process values require strict compliance with the statutory requirements.") (quotation omitted). Moreover, "the plaintiff bears the burden of showing the validity of substituted service of process. The court lacks

---

[2] *See*, *e.g.*, *Burris v. Green*, No. 3:12-CV-521/MCR/CJK, 2015 WL 3466117, *4 (N.D. Fla. June 1, 2015); *HSBC Bank USA, Nat'l Ass'n v. Centre Court Ridge Condo. Ass'n*, 147 So.3d 593, 594 (Fla. 5th DCA 2014); *Thompson v. Mosby Legal Grp., LLC*, No. 3:12-CV-692-J-99TJC, 2013 WL 2191511, *1-2 (M.D. Fla. May 21, 2013); *Royal Caribbean Cruises, Ltd. v. Jackson*, No. 12-22000-CIV, 2013 WL 496060, *2 (S.D. Fla. Feb. 7, 2013); *Kasby v. Upper Deck Bar & Grill, LLC*, No. 6:11-CV-152-ORL-36GJK, 2012 WL 13141504, *2 (M.D. Fla. Sept. 26, 2012); *EHR Aviation, Inc. v. Lawson*, No. 3:09-CV-210-J-32TEM, 2011 WL 46119, *1 (M.D. Fla. Jan. 6, 2011); *Pelycado Onroerend Goed B.V. v. Ruthenberg*, 635 So.2d 1001, 1003 (Fla. 5th DCA 1994).

jurisdiction if the plaintiff cannot meet this burden." *Amerilife*, 2017 WL 8948391 at *2.

The record before the Court makes clear that Plaintiffs did not strictly comply with the requirements of Fla. Stat. §§ 48.161 or 48.181.  First, there are no allegations in the Complaint of concealment or evasion by any Defendant.  Nor was any amended complaint making such required allegations filed to place Defendants within the purview of the substitute service statutes.  Second, no notice of service upon the Secretary of State, with a copy of the Complaint and summons, was sent to Defendants by registered or certified mail.  *See* Ex. 1 at ¶ 5; Ex. 2 at ¶ 7; Ex. 3 at ¶ 4.  We also know this because, third, Plaintiffs did not file any registered or certified mail return receipts with the Court.  And, fourth, Plaintiffs did not file an affidavit of compliance on or before the return date of the process, which was September 16, 2019 (ninety (90) days from when the Complaint was filed on June 17, 2019).

***None of these failures to comply (strictly or otherwise) with Florida law – each of which, standing alone, is sufficient to preclude effective service of process – can be disputed***.  As Plaintiffs clearly did not strictly comply with the requirements of Fla. Stat. §§ 48.161 and 48.181, no valid substitute service was made.  *See Green Emerald Homes, LLC v. Fed. Nat'l Mortg. Ass'n*, 224 So. 3d 799, 802 (Fla. 2d DCA 2017) (finding substitute service invalid because "complaint was devoid of any of the . . . jurisdictional allegations" required by § 48.161, rendering the complaint "not sufficient to authorize substituted service"); *Burris*, 2015 WL 3466117 at *4 (finding substitute service invalid "because a copy of the summons and complaint were never sent to Franck by registered or certified mail" and "did not file an affidavit of compliance or file the registered or certified mail return receipt"); *Taverna Opa*, 2009 WL 1220513 at *1 ("To perfect substitute service under § 48.181, the plaintiff must allege in the complaint the jurisdictional basis for invoking the statute. . . .  Because the complaint lacks the necessary jurisdictional allegations, substitute service was not proper."); *Mecca Multimedia*, 954 So. 2d at 1182 (finding substitute service invalid because based on failure to comply with § 48.161, specifically "[t]he complaint, however, did not allege, nor was it amended to allege, any concealment on the part of Mecca").

Especially given the lack of any demonstrable diligence by Plaintiffs to serve Defendants, on top of their failure to strictly comply with the requirements for substitute service under Florida law, quashing service of process is necessary to avoid depriving Defendants of their due process as a result of Plaintiffs' stumbles and failures to effect service of process.

### C. Plaintiffs Did Not Comply With Rule 4(m)

Finally, Plaintiffs did not effectuate timely service under Federal Rule of Procedure 4(m), so their failed attempt at substitute service was null and void ab initio. A plaintiff is responsible for serving a defendant with both a summons and a complaint within the timeframe set forth in Rule 4(m). Fed. R. Civ. P. 4(c)(1). Rule 4(m) requires a plaintiff to serve process on a defendant "within 90 days after the complaint is filed." If the plaintiff fails to do so, "the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* But, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* Good cause exists, "only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Lepone-Dempsey v. Carroll County Com'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) (internal punctuation and quotation omitted). The good cause standard is applied narrowly to protect only those litigants who have exercised meticulous care in attempting to complete service. *See Despaon v. Salt Lake Are Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994). *See also Harper v. M/V OURO DO BRASIL*, No. 8:12-CV-1976-T-23TGW, 2013 WL 12388568, at *6 (M.D. Fla. July 10, 2013) ("The lesson to the federal plaintiff's lawyer is not to take any chances. Treat the [time limit] with the respect reserved for a time bomb.") (quoting *Braxton v. United States*, 817 F.2d 238, 241 (3d Cir. 1987)).

The Complaint in this case was filed on June 17, 2019, which means Plaintiffs had until September 16, 2019 to serve all Defendants. Plaintiffs did not serve the Florida Secretary of State until September 27, 2019. *See* ECF 22. Plaintiffs' did not request additional time to serve Defendants or even attempt to make the required showing of excusable neglect for Plaintiffs' failure to request additional time to serve the other Defendants before the deadline. *See* Fed. R. Civ. P. 6(b)(1)(B). This requirement cannot come as news to Plaintiffs because at least twice Defendants put them on notice of these facts. *See* ECF 15 at 2; ECF 29 at 2-3. *See also Florio v. Success Agency LLC*, No. 17-80557-CV, 2017 WL 8897130, at *7 (S.D. Fla. Oct. 30, 2017) (quashing service and dismissing case because, *inter alia*, plaintiffs were on notice of untimely service and potential for dismissal due to defendants filings, and still made no attempt to seek an extension. This militates against using any discretion to avoid dismissal.

Even absent a showing of good cause, "a district court has the discretion to extend the

9

time for service of process." *Florio*, 2017 WL 8897130, at *7 (citation omitted). However, where Plaintiffs have "failed to exercise reasonable diligence in locating and serving Defendants" and "had notice of a potential dismissal without prejudice based on Rule 4(m)" – as is the case here – "there is an insufficient basis to warrant an extension of time." *Id.* As described above Plaintiffs exercised no diligence in their service attempts. They certainly did not "[t]reat the [time limit] with the respect reserved for a time bomb." *Harper*, 2013 WL 12388568, at *6. In light of Defendants' repeated reminders to Plaintiffs of the requirements of Rule 4(m), Plaintiffs' failure to request an extension, let alone make the required showing of good cause, and lack of reasonable due diligence warrants dismissal in this circumstance.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST DEFENDANTS

### A. The FAC Should be Dismissed as Improper Claim-Splitting

This suit also should be dismissed because, in filing claims regarding the same telephone calls at issue in the Northern District of Illinois in *Bakov I*, Plaintiffs have engaged in improper claim-splitting. The rule against claim-splitting "flows from the doctrine of *res judicata*" and "makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action." *Pollitz v. Halifax Health*, No. 6:15-CV-450-ORL-37, 2015 WL 4987732, *2 (M.D. Fla. Aug. 19, 2015) (citation omitted). *See also Roca Labs, Inc. v. Century Scis., LLC*, No. 14-60123-CIV, 2014 WL 11775477, *3 (S.D. Fla. June 16, 2014) ("[W]hile *res judicata* applies to suits that have already been adjudicated, claim splitting applies to simultaneously pending suits.").

"It is well settled that a plaintiff 'may not file duplicative complaints in order to expand their legal rights.'" *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (quoting *Greene v. H & R Block E. Enters., Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010); *see also Katz v. Girardi*, 655 F.3d 1212, 1217 (10th Cir. 2011). The claim-splitting doctrine "ensures that a plaintiff may not 'split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.'" *Id.* (quoting *Stark v. Starr*, 94 U.S. 477, 485 (1876)). Courts apply a two-factor test when analyzing potential claim-splitting: "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Vanover*, 857 F.3d at 841–42 (quoting *Khan v. H & R Block E. Enters., Inc.*, No. 11-20335-Civ, 2011 WL 3269440, at *6 (S.D. Fla. July 29, 2011)). Both

requirements are established here as a matter of law.

### i. *Bakov I and This Case Involve the Same Parties and Their Privies*

Given the FAC's allegations, the Defendants are in privity with CWT, the lone defendant in *Bakov I*, and therefore the first requirement for claim-splitting is satisfied. "Privity exists where the nonparty's interests were represented adequately by the party in the original suit" or where "a party to the original suit is so closely aligned to a nonparty's interest as to be his virtual representative." *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 156-61 (11th Cir. 1990) (internal quotation marks and citations omitted). "The Eleventh Circuit has found privity exists in a principal-agent relationship or employee-employer relationship," and privity has also been found to exist "between a controlling shareholder and the corporation itself because the two have sufficient interests in common." *Roca Labs*, 2014 WL 11775477 at *4 (citing *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502-03 (11th Cir. 1990); *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983)).

A plaintiff may not avoid the rule against claim-splitting where the face of the complaint alleges privity or identity of parties. *See Bowman v. Coddington*, 517 F. App'x 683, 684 (11th Cir. 2013) (holding rule against splitting causes of action precluded a later-filed suit even though the named defendants were different because the plaintiff himself urged that they were the same entity or "alter ego" of one another); *United States v. Avatar Holdings, Inc.*, 93-281-CIV-FTM-21, 1995 WL 871260, *21 (M.D. Fla. Nov. 22, 1995) (finding that claims against parent company were barred by *res judicata* and noting that the plaintiff cannot argue that a parent company is liable for its subsidiary's actions "under a theory of parent control of its subsidiary and, at the same time, assert that although it is a parent corporation, it is not in privity with the subsidiary for the purpose of res judicata"). The FAC's allegations here are the same with respect to Defendants, and require dismissal.

There can be no question that Defendants are alleged to be in privity with CWT. In the FAC, Plaintiffs emphatically allege that Verrillo "owns or controls" CWT, was allegedly one of its two directors, and "ran [its] operations" and "oversaw all departments"), (*see* FAC at ¶¶ 23-25); Poole "participated in the illegal telemarketing campaign at issue" in her capacity as the alleged "President and Director of Marketing for CWT", (*see* FAC at ¶¶ 35-36); and Higgins "participated in the illegal telemarketing campaign at issue" in her capacity as the alleged "President and Marketing Manager" for CWT. *See* FAC at ¶¶ 39-40. Although the allegations

are insufficient as a matter of law to state a theory or claim of personal liability liability (as discussed below), they make clear that Plaintiffs seek to impose liability upon Defendants as a privies of CWT, which is not allowed under the claim-splitting doctrine.  Where an individual defendant is an "employee[] and/or agent[]" of a corporate defendant, then the individual defendant's interests are deemed adequately represented in preceding litigation against the corporate defendant so as to place him or her in privity with the corporate defendant.  *Burstein*, 2007 WL 9642995 at \*2.  *See also Echeverria v. Bank of Am.*, N.A., 632 Fed. Appx. 1006, 1008 (11th Cir. 2015) ("A principal-agent relationship is one kind of 'substantive legal relationship' that establishes privity for claim preclusion purposes."); *Barclay v. Lowe*, 131 F. App'x 778, 779 (2d Cir. 2005) ("All defendants are employees of Attica and their interests are adequately represented by those in the first suit who are vested with the authority of representation.").

"Most other federal circuits have concluded that employer-employee or principal-agent relationships may ground a claim preclusion defense, regardless which party to the relationship was first sued." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502 (11th Cir. 1990) (citing *Fiumara v. Fireman's Fund Ins. Co.,* 746 F.2d 87, 92 (1st Cir.1984); *Lambert v. Conrad,* 536 F.2d 1183, 1186 (7th Cir. 1976); *Lober v. Moore,* 417 F.2d 714 (D.C.Cir. 1969); *Spector v. El Ranco, Inc.,* 263 F.2d 143, 145 (9th Cir. 1959).  Although alleged directors and officers are not necessarily in privity with their corporations solely as a result of their alleged titles, they are privies when a plaintiff is seeking damages "only under the theory of respondeat superior or vicarious liability."  *Id.* at 1502-03.  Here, Plaintiffs do not allege that Defendants were the makers or initiators of the calls at issue. At most, they allege that they either "ran the operations of [CWT], oversaw all departments (including marketing, fulfillment, and customer service)," and "authorized the illegal telemarketing campaign at issue in this lawsuit . . . .", (FAC at ¶¶ 25-26, regarding Verriollo), or "participated in the illegal telemarketing campaign at issue" in their capacity as alleged officers or employees of CWT.  FAC at ¶¶ 35-36 and 39-40 (regarding Poole and Higgins).  They thus seek to hold Defendants liable for the actions of another by the imposition of vicarious liability.  This theory of recovery clearly makes Defendants privies of CWT for purposes of the claim-splitting analysis, and the individual claims against Defendants must be dismissed.

Moreover, to the extent Plaintiffs attempt to allege that Defendants were "the controlling forces behind [CWT]," that, too, places them within privity with CWT, once again satisfying the

12

first factor of the claim-splitting analysis. *Roca Labs*, 2014 WL 11775477 at *4. And claim-splitting is also implicated by Plaintiff's "everything-but-the-kitchen-sink" allegation that Verrillo also "owns or controls, or has owned or controlled, numerous business in the marketing and hospitality industries, including [CTHG and CWT] . . . ." FAC at ¶ 23. *See Burstein v. Rumball*, No. 06-81064, 2007 WL 9642995, *2 (S.D. Fla. May 21, 2007) ("The Eleventh Circuit has held that owners of a corporation can be found to be in privity with the corporation.") (citing *Balbrier v. Austin*, 790 F.2d 1524 (11th Cir. 1986)); *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1288 (11th Cir. 2004) (noting that certain "close relationships between the parties and nonparties," such as "presidents and sole stockholders by their companies, [or] parent corporations by their subsidiaries" create privity for purposes of claim preclusion).

### ii. *Bakov I and This Case Arise from the Same Series of Transactions*

There can be no question that the second factor of the claim-splitting analysis, "whether [*Bakov I* and this case] arise from the same transaction or series of transactions," (*Vanover*, 857 F.3d at 841-42), is also satisfied. "Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Id.* at 842. Plaintiffs concede that they are asserting the same TCPA claim on behalf of the same persons over the same telephone calls at issue in the Northern District of Illinois in *Bakov I*. *See* FAC at ¶ 57 ("This lawsuit asserts the same claim on behalf of the same Class against additional parties who authorized, directed, or participated in the illegal telemarketing campaign at issue in the Illinois Class Action."). Accordingly, as both factors of the claim-splitting analysis have been satisfied, Defendants should be dismissed from the case. As privies, they are within the scope of the claim-splitting doctrine.

### iii. *Plaintiffs' Personal Jurisdiction Excuse Is Unavailing*

In the FAC, Plaintiffs assert for the first time that, "[b]efore [sic] the Northern District of Illinois determined Defendants . . . are not subject to its jurisdiction, no binding judgment was or could have been entered against them by that Court." FAC at ¶ 58. Plaintiffs appear to be laying the groundwork for the argument that because the court in *Bakov I* concluded Plaintiffs had not sufficiently established that court's personal jurisdiction over Defendants, the claim-splitting doctrine cannot apply.

The doctrine, however, is concerned with "the improper splitting of claims which could have been brought in [an] earlier . . . lawsuit." *Vanover*, 857 F.3d at 841 (citing *Katz*, 655 F.3d

13

at 1214). The court in *Bakov I* issued its personal jurisdiction ruling on August 4, 2016, which was early in the case and upon review of the initial complaints filed by Bakov and another named plaintiff. *See generally* FAC, Ex. B. Plaintiffs filed subsequent complaints in the case and, more importantly, sought and were granted permission to file a motion to yet again amend their class complaint following the close of fact discovery and immediately before the filing of their motion for class certification but elected not to seek leave to file an amended pleading.

There is no reason why Plaintiffs could not have sought leave then (or at any earlier point in the case) to add Defendants and attempt to argue, based on the facts developed in discovery, that they could now establish personal jurisdiction through specific personal jurisdiction or imputation of jurisdictional contacts on the officer/director control theory. This is especially the case when the allegations against Defendants in the FAC are all drawn from discovery adduced in *Bakov I* following the *Bakov I* court's initial ruling or from information that was publicly available long before July 17, 2018. While Defendants by no means concede that Plaintiffs would have succeeded in that effort, Plaintiffs certainly could have made the attempt in *Bakov I* based on the same allegations – which are drawn from discovery conducted in *Bakov I* – that they make in this case. Their intentional decision not to do so in *Bakov I* precludes them from engaging in that exercise in a second lawsuit, because they could have brought these claims in *Bakov I*. "To rule otherwise would defeat the objective of the claim-splitting doctrine to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket." *Vanover*, 857 F.3d at 843.

### B. The FAC Fails to State a TCPA Claim against Defendants

Even if the Court finds that Plaintiffs have standing to assert their TCPA claims, and their claim against Defendants are not barred by the claim-splitting doctrine, the claims should still be dismissed for failure to state a cause of action. Plaintiffs fail to allege facts sufficient to state any plausible basis for liability under the TCPA against any of the Defendants.

#### i. *Verrillo*

Finally, Plaintiffs fails to state any facts in the FAC that would suffice to state a plausible claim for personal liability under the TCPA against Verrillo, whom they allege was an officer or of CWT. At most, Plaintiffs allege that Verrillo "authorized the illegal telemarketing campaign at issue in this lawsuit by, among other things, authorizing payments to [VVT] and receiving reporting regarding call volume and other similar matters." FAC at ¶ 26. That allegation is too

conclusory, vague, and insufficient to state a claim for personal liability.

"[I]n the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents. . . . A corporate employee typically acts on behalf of the corporation, not its owner or officer." *Meyer v. Holley*, 537 U.S. 280, 285 & 289 (2003). The courts have specified that "the direct commission or authorization of wrongful acts by the corporate officer" is required to impose personal liability under the TCPA. *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-CIV-SCOLA, 2013 WL 1283885, *4 (S.D. Fla. Mar. 27, 2013).[3] If an authorization is the basis of personal liability, as is the case here, such authorization must be coupled with knowledge that the conduct being authorized violates the TCPA. *See Physicians Healthsource*, 2015 WL 3644598 at *3 (requiring knowing authorization of wrongful acts). Thus, "[i]n order for [Verrillo's] conduct to rise to that level here," as an alleged officer or director of CWT, "the Court finds Plaintiff[s] would have to show that [Verrillo] failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA, or that he authorized or personally engaged in conduct that ***clearly*** violated the TCPA." *Mais*, 2013 WL 1283885 at *4 (emphasis added).

Judge Scola's decision in *Mais* is directly on point. In *Mais*, Jack W. Brown was named a defendant in a putative TCPA class action. Plaintiff alleged Brown was the "vice president and 20% owner of" Gulf Coast, the corporate defendant, and the person who "controlled the policies and practices of Gulf Coast regarding the TCPA and who authorized those policies and practices complained of herein." *Id*. at *1 & 3 (quoting plaintiff's complaint) (brackets omitted). Although the case was at the summary judgment stage, the court pointed out that the complaint's "scant factual allegations as to [Brown's] role in the conduct complained of" precluded Plaintiff from obtaining "any relief from Brown as a matter of law." *Id.* at *3. Alternatively, the court

---

[3] *See also Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001) ("[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved"); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2015 WL 3644598, *3 (S.D. Fla. June 10, 2015) ("[I]n every known case holding a corporate officer personally liable under the TCPA, the officer had either directly committed or knowingly authorized the corporation's wrongful acts."). *Cf. Savanna Group, Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 4734004, *8 (N.D. Ill. Sept. 3, 2013) ("[P]remising Truan's liability solely on his status as the head of marketing would run afoul of the principle that a corporate officer may not be liable for corporate acts based purely on his or her status in the corporation.").

15

awarded Brown summary judgment on the merits because, "[w]hile Brown is the person who allegedly authorized the use of Gulf Coast's dialer, there is no evidence of plainly violative conduct by Brown personally; indeed, there is no evidence that he had anything personally to do with the calls made to Plaintiff or any putative class member." *Id.* at *4 (internal quotation omitted).

Similarly, here the FAC does not allege facts sufficient to plausibly claim that Verrillo "failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA, or that he authorized or personally engaged in conduct that clearly violated the TCPA." *Id.* The *only* conduct by Verrillo alleged in the FAC that is relevant to the TCPA claim is the vague allegation that he "authoriz[ed] payments to [VVT] and receiv[ed] reporting regarding call volume and other similar matters." FAC at ¶ 26. Nothing in this allegation suggests Verrillo had knowledge that the conduct being authorized violated the TCPA, and it is unclear how the passive activity of merely receiving reports about telephone calls that have been made establishes the requisite personal participation in or authorization of allegedly unlawful conduct.

The FAC does not allege that Verrillo specifically and knowingly authorized ***any particular conduct by VVT***, such as the conduct at issue in this lawsuit – the alleged use of a prerecorded voice – or conduct that Verrillo knew was in violation of the TCPA. Corporate officers (and employees) routinely authorize their companies' payments to vendors. That act on behalf of a corporation, alone, is hardly a basis upon which ***personal*** liability for a corporation's violation of a federal statute can be imposed. *Cf. Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, No. 14 C 5602, 2019 WL 527497, *7 (N.D. Ill. Feb. 11, 2019) (rejecting argument that defendant "should be held liable because 'the sending of the faxes was at the core of Med-Care's business,' and Silverman must have exercised direct authorization and control over it as the president of the company," as "a veiled attempt to impose vicarious liability on Silverman" that fails to "establish his 'direct participation or authorization'") (quoting *Physicians Healthsource*, 324 F. Supp. 3d at 983); *Mais*, 2013 WL 1283885 at *4 ("Corporate officers are generally not liable merely because the corporation has violated the law, and this Court is not going to leave the door wide open for such liability here."). *See also Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1313 (11th Cir. 2013) ("[I]ndividuals ordinarily are shielded from personal liability when they do business in a corporate form, and . . . it should

not lightly be inferred that Congress intended to disregard this shield.").

In fact, the Third Circuit, based largely on Eleventh Circuit case law, has recently questioned the "direct participation or authorization" standard for personal liability under the TCPA, and has suggested that officers should rarely be held liable under the TCPA if acting in their corporate, rather than personal, capacities. *See City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 159-161 (3d Cir. 2018) (citing, *e.g.*, *Lamonica*, 711 F.3d at 1313; *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015)). The Third Circuit proposed an analysis that asks "whether the relationship between the corporation and the individual defendant was 'eccentric under accepted norms' of corporate conduct such that faxes were really sent on behalf of the individual instead of the entity." *Id.* at 160 (quoting *United States v. Bestfoods*, 524 U.S. 51, 72 (1998)). A corporate officer authorizing his company's entry into an agreement is hardly "eccentric under accepted norms."

Regardless, even under the "direct participation or authorization" standard, the mere allegation that Verrillo authorized payments to a company engaging in telemarketing, without anything more, is insufficient to plausibly render Verrillo the "guiding spirit[ ]" and the "central figure[ ] behind the [alleged] TCPA violations" or to plausibly state that he "directly controlled and authorized" the alleged misconduct. *Am. Blastfax*, 164 F. Supp. 2d at 898. No plausible claim for personal liability is stated against Verrillo, and he therefore should be dismissed from this case.

### ii. *Higgins and Poole*

For similar reasons, no plausible claim for personal liability is stated against Higgins or Poole either. Plaintiffs allege that Higgins "execut[ed] agreements with [VVT], The Marketing Source, Inc., and Media Monitors, Inc., coordinat[ed] quality control work for the campaign, interact[ed] with call centers, monitor[ed] the compliance with 'Do Not Call' requests, and receiv[ed] and analyz[ed] reporting regarding call volume and other similar matters." FAC at ¶ 40. Plaintiffs allege that Poole test[ed] the use of prerecorded voice in telemarketing calls, revis[ed] and approv[ed] the script used to create the prerecorded voice files VVT used, controll[ed] the flow of calls transferred by VVT to CWT and its affiliates' call centers in the U.S., provid[ed] various forms of day-to-day oversight or support for the campaign, and receiv[ed] and analyz[ed] reporting regarding call volume and other similar matters. FAC at ¶ 36.

None of these allegations satisfies the standard set forth by courts in this District that "[s]ome showing of *intentional misconduct or gross failure* to implement policies that comply [with the TCPA]" be made. *Appelbaum v. Rickenbacker Grp., Inc.*, No. 12-CV-80251, 2013 WL 12121104, at *3 (S.D. Fla. July 31, 2013) (quoting *Mais*, 2013 WL 1283885, at *4 n.1.). In fact, to the contrary, if the allegations are true, they establish that these individuals made their best efforts to implement policies that comply with the TCPA by testing the technology for compliance and monitoring compliance with do-not-call rules. *See* FAC at ¶¶ 36 and 40. Nor was "the relationship between the corporation and the individual defendant . . . 'eccentric under accepted norms' of corporate conduct such that [calls] were really [made] on behalf of the individual instead of the entity." *City Select Auto Sales Inc.*, 885 F.3d at 160. Plaintiffs fail to state any facts in the FAC that would suffice to state a plausible claim for personal liability under the TCPA against Defendants, so the claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants James Verrillo, Donna Higgins, and Jennifer Poole request that the Court enter an order quashing service and dismissing all claims asserted against them, and for any other relief this Court deems just and proper.

Dated: December 12, 2019

GREENSPOON MARDER LLP

*/s/ Roy Taub*
JEFFREY A. BACKMAN, ESQ.
(Fla. Bar No. 0662501)
jeffrey.backman@gmlaw.com
RICHARD W. EPSTEIN, ESQ.
(Fla. Bar No. 229091)
richard.epstein@gmlaw.com
ROY TAUB, ESQ.
(Fla. Bar No. 116263)
roy.taub@gmlaw.com
GREGG I. STROCK , ESQ.
gregg.strock@gmlaw.com
(Fla. Bar No. 1010140)
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954-491-1120 (Telephone)
954-343-6958 (Facsimile)

*Attorneys for Defendants James Verrillo, Donna Higgins, and Jennifer Poole*