UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:19-cv-61509-WPD/Snow

ANGEL BAKOV and KINAYA HEWLETT,     **CLASS ACTION**
individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.

CONSOLIDATED TRAVEL HOLDINGS
GROUP, INC., *et al.*,

      Defendants.
_____/

**DEFENDANTS' MOTION TO STAY DISCOVERY**

Defendants Consolidated Travel Holdings Group, Inc. ("CTHG"), Daniel Lambert, James Verrillo, Jennifer Poole, and Donna Higgins, by their undersigned counsel, submit this Motion to Stay Discovery pending Defendants' Motions to Dismiss, (Dkt. Nos. 19 and 35) (the "Motions to Dismiss"), and in support thereof state the following:

**PRELIMINARY STATEMENT**

As the Court knows by now, this case asserts the exact same claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") that the same Plaintiffs filed on behalf of the exact same class years earlier and is pending solely against Consolidated World Travel, Inc. ("CWT"), a subsidiary of CTHG, in the Northern District of Illinois. *See Bakov v. Consolidated World Travel*, Case No. 1:15-cv-02980 (N.D. Ill.) ("*Bakov I*"). Plaintiffs and their counsel (who are also their attorneys in *Bakov I*) had an opportunity to conduct extensive discovery regarding CWT and the telephone calls at issue in that case (the "VVT Calls").

Now, nearly two months after the Rule 26(f) conference, Plaintiffs served incredibly broad and overreaching discovery requests regarding not only virtually every aspect of CWT and the VVT Calls – information and discovery they already obtained in *Bakov I* – but also about an entirely irrelevant separate subsidiary of CTHG – Caribbean Cruise Line, Inc. ("CCL") – and completely invasive and burdensome discovery regarding the Defendants' finances (when the only available damages are statutory damages that have no relation to any party's finances) and seemingly every aspect of CTHG's, CCL's, and CWT's operations.

And, for reasons that are developed fully in the Motions to Dismiss, Plaintiffs' claims here should be dismissed in their entirety, but at a minimum as to certain of the Defendants. Plaintiffs improperly split their TCPA claim in the *Bakov I* action and are asserting it here regarding the same VVT calls on behalf of the same class of people against people that Plaintiffs contend are in privity with CWT. The claim-splitting doctrine, a form of *res judicata*, which Plaintiffs make clear they believe is applicable to the Defendants here, unquestionably precludes this lawsuit. Plaintiffs' lack of Article III standing also bars this suit. And, even on a more granular level, there are insurmountable obstacles to Plaintiffs being able to state a plausible claim against the Defendants, even after obtaining discovery in *Bakov I*, that requires their dismissal. Plaintiffs fail to allege facts sufficient to rise to the high showing required to state an alter ego liability claim against CTHG. They fail to state plausible claims for personal liability against Lambert, Verrillo, Poole, or Higgins. And Plaintiffs failed to justify or excuse their indisputable failure to properly serve Verrillo, Poole, or Higgins, yet another ground mandating these individual Defendants' dismissal from this lawsuit, but it also brings to the forefront that parties that have not yet even been properly served, and who as a result should be dismissed as being outside the court's jurisdiction, should not be subject to discovery.

These circumstances present an entirely appropriate reason for the Court to exercise its discretion and stay discovery pending its rulings on Defendants' Motions to Dismiss. The Motions to Dismiss are highly meritorious and would streamline, if not entirely end, this lawsuit. A stay would greatly reduce the burden of litigating a case that should never have been filed, and Plaintiffs will not suffer any prejudice from what is likely to be a relatively slight stay. Moreover, the ensuing COVID-19 coronavirus outbreak further supports a stay of discovery, as it is exceedingly difficult for Defendants, some of which remain involved in the heavily distressed travel industry, to respond to discovery requests. The coronavirus outbreak also is likely to have resulted in the Court requiring further time to rule on the Motions to Dismiss. In deciding a motion to stay discovery, a district court must balance the harm produced by any delay from a stay of discovery against the possibility that the dispositive motion will be granted and entirely eliminate the need for discovery. Here, both considerations weigh heavily in favor of a stay of discovery.

## STATEMENT OF FACTS

Plaintiffs commenced this follow-on lawsuit on June 17, 2019. *See* Dkt. No. 1. Plaintiffs served Defendants CTHG and Lambert with the Complaint and Summons on August 1, 2019. *See* Dkt. No. 7. As argued in Defendants Verrillo, Poole, and Higgins' motion to dismiss, they have never been served with process in this case. *See generally* Dkt. Nos. 35 & 46. Defendants CTHG and Lambert's motion to dismiss was filed on October 17, 2019, and Defendants Verrillo, Poole, and Higgins' motion was filed on December 12, 2019.

The parties conducted a Rule 26(f) scheduling conference on January 8, 2020,[1] and filed a Joint Scheduling Report on January 28, 2020. *See* Ex. A. It was not until March 4, 2020,

---

[1] Counsel for the other named Defendants – The Marketing Source, Inc., Vance L. Vogel, Sun Bridge Systems, LLC, and Clifford Albright – did not participate. Plaintiffs voluntarily dismissed these Defendants two days later on January 10, 2020. *See* Dkt. No. 43.

however, when Plaintiffs served document requests and interrogatories on the Defendants. *See* Exs. B-D. Nothing in the Rule 26(f) conference or the Joint Scheduling Report gave any indication that, in this follow-on lawsuit in which Plaintiffs have already obtained expansive discovery from CWT, the entity that had contracted with the vendor that made the VVT Calls (neither of which is a party to this case), Plaintiffs would seek the overbroad and virtually all-encompassing discovery from these Defendants. The documents and information sought from Defendants include:

- Identification of all "persons who communicated with VVT [Virtual Voice Technologies Pvt. Ltd.] concerning the telemarketing campaign at issue in this litigation . . . and the nature and extent of such communications," (Ex. B at Interrog. No. 1);

- Identification of all "persons who directed, approved, or oversaw" the telemarketing campaign at issue aimed at obtaining information for Plaintiffs to fill in any gaps in their pleadings, despite already having had the opportunity for extensive discovery in *Bakov I*, (*Id*. at Interrog. Nos. 2-7);

- Information regarding each individual Defendant's "ownership of, control over, investment in, and employment by" CTHG and two entities that are not party to this lawsuit, one of which is CWT, which was the subject of discovery in *Bakov I*, and the other, CCL, has no relevance to any asserted claim, (*Id*. at Interrog. Nos. 8-9);

- Completely irrelevant financial information of the individual Defendants, such as contracts or agreements between them and CTHG or the irrelevant entities CWT or CCL, each of their return on investment or compensation from CTHG or the

irrelevant entities CWT or CCL, and each of their "financial condition and net worth from four years prior to the commencement of this action through the present, including your assets and liabilities," (*Id.* at Interrog. Nos. 10-12);

- Virtually every item of information – *e.g.*, street addresses and telephone numbers, leases, dividends, board of director meetings, loans, bank accounts, stock ledgers, capitalization, and lines of credit regarding CTHG, CWT, and CCL, (Ex. C at Interrog. Nos. 1-13; Ex. D at Req. Nos. 1-15);

- Completely irrelevant financial information of CTHG, such as contracts or agreements between it and its subsidiaries, return on investment or compensation from each subsidiary, and its "financial condition and net worth from four years prior to the commencement of this action through the present, including your assets and liabilities," (Ex. C at Interrog. Nos. 14-16; Ex. D at Req. Nos. 16-18);

- "All documents concerning policies or procedures related to compliance with the [TCPA]" of not only CWT, which was already produced, but CTHG and the irrelevant non-party CCL, (Ex. D at Req. No. 19);

- "All documents concerning the direction, approval, and oversight of the telemarketing campaign at issue" and more specific requests for same, which would encompass virtually every document related to the telemarketing conducted by VVT at issue in this lawsuit, even though Plaintiffs already had an opportunity and received the requested discovery in *Bakov I*, (Ex. D at Req. Nos. 20-27); and

- "All documents concerning the Plaintiffs," (Ex. D at Req. No. 31), a request which, along with several others, implicates an exceedingly large number of

communications regarding the *Bakov I* lawsuit that are obviously protected by the attorney-client privilege and the attorney-work product doctrine and would require the incredibly costly and burdensome preparation of a privilege log for communications that are undeniably privileged.

Moreover, since the date of service of the discovery requests, the United States has been subject to an outbreak of the COVID-19 coronavirus. The Governor of Florida and the Administrator of Broward County, where CTHG and all but one of the individual Defendants reside, have ordered all non-essential businesses in Broward County to close and encouraged all individuals to remain at home. *See, e.g.*, https://www.broward.org/CoronaVirus/Documents/BerthaHenryExecutiveOrder20-01.pdf. The coronavirus outbreak has had the effect of most likely postponing the Court's ruling on the motions to dismiss and making it exceedingly difficult for Defendants to be able to respond to discovery regarding a "non-essential" business while being directed to remain in their homes.

## ARGUMENT

This Court has broad discretion to stay proceedings in an action. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). In deciding whether to stay a case, courts generally consider (1) whether a stay will simplify the issues and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party. *See Garcia v. Acosta Tractors Inc.*, No. 12-21111-CIV, 2017 WL 4169670, *4 (S.D. Fla. Sept. 20,

2017). In addition, there must be reasonableness and good cause for a stay of discovery. *Chevaldina v. Katz*, No. 17-22225-CIV, 2017 WL 6372620, *2 (S.D. Fla. Aug. 28, 2017).

"[C]ourts have held good cause to stay discovery exists wherein resolution of a preliminary motion may dispose of the entire action." *Tradex Glob. Master Fund SPC Ltd. v. Palm Beach Capital Mgmt., LLC*, No. 09-21622-CIV, 2009 WL 10664410, *1 (S.D. Fla. Nov. 24, 2009). This is especially true where the "Motion to Dismiss asserts that the Court has neither subject matter jurisdiction over the case nor personal jurisdiction over [a defendant], [because] it is possible that the Court lacks the authority to mandate that the parties engage in discovery." *Seaway Two Corp. v. Deutsche Lufthansa Aktiengesellschaft*, No. 06-20993-CIV, 2006 WL 8433652, *1 (S.D. Fla. Nov. 17, 2006).

As a general rule, facial challenges to the legal sufficiency of a claim or defense should be resolved before discovery begins." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("If the district court dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided."). *See also Solar Star Sys., LLC v. Bellsouth Telecommunications, Inc.*, No. 10-21105-CIV, 2011 WL 1226119, *1 (S.D. Fla. Mar. 30, 2011) ("Potentially dispositive motions filed prior to discovery weigh heavily in favor of issuing a stay."); *In re Managed Care Litig.*, No. 00-1334-MD, 2001 WL 664391, *2 (S.D. Fla. June 12, 2001) ("This Court firmly abides by *Chudasama*'s instructions that discovery should follow the filing of a well-pleaded complaint" and that "any legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery stage, if possible.").

Here, all of the factors favor a stay pending the outcome of Defendants' motions to dismiss and demonstrate reasonableness and good cause:

***First***, a stay will simplify the issues and streamline this case because the motions are likely to dispose of the entire case or, alternatively, drastically reduce the scope of discovery. Among other things, Defendants' motions asserts that (1) the claim-spitting doctrine bars this entire suit, as Plaintiffs were required to have brought the TCPA claims asserted against Defendants here in the *Bakov I* action, especially when Plaintiffs, by their own allegations, contend Defendants are the privies of CWT; (2) Plaintiffs lack standing under Article III; (3) the sole basis for CTHG's inclusion in this lawsuit, on an alter ego theory, has not been plausibly stated; (4) the sole basis for liability against Defendants Lambert, Verrillo, Poole, and Higgins – personal liability – has not been plausibly stated; and (5) the Court lacks personal jurisdiction over Defendants Verrillo, Poole, and Higgins, as they were never properly served, despite Plaintiffs having been placed on notice repeatedly of the deficient nature of their service attempts.

For reasons that have been extensively briefed, the claim-splitting doctrine is completely dispositive of this action. *See* Dkt. No. 19 at 8-14; Dkt. No. 33 at 4-6; Dkt. No. 35 at 10-14; Dkt. No. 46 at 5-7; Dkt. No. 47 at 1-2. Plaintiffs have made clear that they believe that "[u]nder the doctrine of *res judicata*," "Judge Leinenweber's findings" in *Bakov I* "'cannot be disputed' in this case" by the Defendants. Dkt. No. 45 at 3. The claim-splitting doctrine "ensures that a plaintiff may not 'split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.'" *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (quoting *Stark v. Starr*, 94 U.S. 477, 485 (1876)). If *Bakov I* is binding as *res judicata* as to these Defendants as privies of CWT, as Plaintiffs contend, then the instant claims were required to have been brought in *Bakov I* and, by extension, the alleged privity status

and same nucleus of operative facts means the claim-splitting doctrine forbids assertion of the same TCPA claim against them in this second lawsuit. *See Kareem v. Ocwen Loan Servicing, LLC*, No. 9:15-CV-80638, 2016 WL 8739580, *4 (S.D. Fla. Mar. 30, 2016) ("Plaintiff is barred by res judicata from asserting any claims he raised (or could have raised) against Defendants' privy in the prior action."), *aff'd*, 723 F. App'x 718 (11th Cir. 2018); *Coker v. Norfolk S. Corp.*, No. 2:18-CV-1364-TMP, 2019 WL 398704, *4 (N.D. Ala. Jan. 31, 2019) (observing that the issue of "whether two entities are in privity so that litigation by one binds the other" exists in both "context[s] of *res judicata* and the related doctrine against claim splitting"). By contending *Bakov I* is binding on these Defendants under *res judicata*, Plaintiffs have abandoned their sole argument against the claim-splitting doctrine, lack of personal jurisdiction, (see Dkt. No. 23 at 6-7), because that may be relevant only to the extent – already debunked in Lambert and CTHG's Reply in Further Support of their Motion to Dismiss, (Dkt. No. 33 at 4-5) – that "no judgment that might have been entered" by "the court in the first case" "would be binding on that party." *Coker*, 2019 WL 398704 at *3. But Plaintiffs now expressly contend *Bakov I* is binding on these Defendants, both abandoning Plaintiffs' lone argument against the claim-splitting doctrine and requiring dismissal under the doctrine.

Even if the claim-splitting doctrine does not bar this suit in its entirety, the lack of any Article III standing arising from the one or two telephone calls at most plausibly stated by Plaintiffs leads to that result in light of the Eleventh Circuit's ruling in *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019). *See* Dkt. No. 19 at 3-8; Dkt. No. 33 at 1-4; Dkt. No. 35 at 4; Dkt. No. 46 at 2-3.

Moreover, the motions to dismiss are likely to streamline the proceedings in this case, even if they are not entirely dispositive. To begin with, the only basis for liability against CTHG

is under an "alter ego" theory of liability. But nowhere in the First Amended Complaint do Plaintiffs allege the requisite domination and control of a corporation or use of a corporate form for a fraudulent or improper purpose – separate and apart from injury from the underlying claim – that allegedly injured Plaintiffs. *See generally* Dkt. No. 19 at 14-17; Dkt. No. 33 at 6-8. No claim has thus been plausibly stated against CTHG, and its dismissal would necessarily render much of the requested discovery regarding CTHG and CCL, one of its subsidiaries, unnecessary.

The other, individual Defendants also have highly meritorious grounds for dismissal of the personal liability claims asserted against them. Merely authorizing a company to enter into an agreement or authorizing payment to a vendor are ministerial types of tangentially involved conduct that fall far short of the requisite "direct commission or authorization of wrongful acts by the corporate officer" that "specifically" and "clearly violated the TCPA" required to impose personal liability under the TCPA. *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-CIV-SCOLA, 2013 WL 1283885, *4 (S.D. Fla. Mar. 27, 2013). *See also Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001) (explaining claim for personal liability requires allegations that defendant "had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved."); Dkt. No. 19 at 17-20; Dkt. No. 33 at 8-10; Dkt No. 35 at 15-18; Dkt. No. 46 at 7-10.[2]

Finally, no discovery can be permitted as against Verrillo, Poole, or Higgins because ***none of them was properly served, and therefore none is within the Court's personal jurisdiction or subject to discovery***. "[B]ecause the Motion to Dismiss" filed by Verrillo, Poole, and Higgins "asserts that the Court" lacks "personal jurisdiction over [them], it is possible that

---

[2] As explained in the motions, this discussion assumes that personal liability is even available under the TCPA if the corporate officer or employee is acting in his or her corporate, rather than personal, capacity. A recent Third Circuit opinion, based largely on Eleventh Circuit case law, reasons that is not the case. *See City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 159-161 (3d Cir. 2018).

the Court lacks the authority to mandate that the parties engage in discovery." *Seaway Two*, 2006 WL 8433652 at *1. Plaintiffs have not attempted to satisfy the requirements for substitute service or any type of service within 90 days, appear to be completely indifferent to the fundamental requirement of service of process before placing a defendant within a court's personal jurisdiction, and have never attempted to make a showing of excusable neglect for their failure to effect service of process that would allow them to avoid dismissal. *See* Dkt. No. 35 at 4-10; Dkt. No. 46 at 3-5. The doors to discovery should be closed in this situation.

**Second**, a stay will reduce the burdens on the parties and the Court by eliminating potentially unnecessary discovery and any related disputes that arise between the parties. This is especially the case when Defendants are being asked to produce "[a]ll documents concerning the Plaintiffs," (Ex. D at Req. No. 31), a request that – in light of the discovery already provided to Plaintiffs and their counsel in *Bakov I* – seems calculated to require Defendants to incur unnecessary and significant costs to prepare a privilege log for obviously protected attorney-client communications and attorney work product regarding the defense of the *Bakov I* lawsuit. There is no need to proceed with discovery that would cause the parties to expend substantial resources where Plaintiffs' claims may be eliminated entirely. *See Chevaldina*, 2017 WL 6372620 at *3 (granting motion to stay and noting that "while a potentially dispositive motion is pending, we agree that Defendants should not be required to suffer monetary burdens or expenses when it appears that Plaintiff's claims may fail for several reasons as a matter of law."); *Seaway Two*, 2006 WL 8433652 at *1 ("There is a significant possibility that the need for discovery may be entirely eliminated through the disposition of Defendants' Motion to Dismiss and/or Motion to Stay Litigation and, therefore, the potential benefits of discovery at this juncture are small."). Even if the claims are only narrowed, as opposed to completely dismissed,

11

the reduced burden in discovery would be concrete and significant for the Defendants, whether fully dismissed from the case or not (and especially in these uncertain times where economic activity has effectively ground to a halt).

*Third*, and finally, a stay would not prejudice, let alone *unduly* prejudice, or provide any tactical disadvantage to Plaintiffs. It is unlikely that a stay would last for any significant amount of time given that the Court has familiarity with the types of issues raised in the Motions to Dismiss and they have been *sub judice* for several months. It is hard to discern any prejudice to Plaintiffs from the stay. They are not starting from a blank slate, having already obtained extensive discovery regarding CWT and the VVT Calls in *Bakov I*. Yet, they are seeking discovery in this action to obtain virtually any and every document and information related to the operations of CTHG, CWT, and CCL, as well as the individual Defendants' financial information (when financial information has no relevance in a TCPA statutory damages case) and apparently the creation of a completely unnecessary but costly privilege log. The great costs and burdens in responding to this discovery when there may very well likely be no need to do so under one of numerous grounds set forth in the Motions to Dismiss, especially in these beleaguered times, when Plaintiffs were in no rush to serve these discovery requests, all weigh in favor of a (likely limited) stay of discovery pending the Motions to Dismiss. Given that Plaintiff's lawsuit should be dismissed, and there is no undue prejudice to Plaintiff, a stay is warranted to reduce the burdens on the parties of proceeding to discovery. *Chevaldina*, 2017 WL 6372620, at *2 (to determine whether a party has met the burden to warrant a stay, "a court 'must balance the harm produced by a delay in discovery against the possibility that the [dispositive] motion will be granted and entirely eliminate the need for such discovery.'").

## CONCLUSION

For the foregoing reasons, Defendants Consolidated Travel Holdings Group, Inc., Daniel Lambert, James Verrillo, Jennifer Poole, and Donna Higgins respectfully request that the Court enter an order staying discovery in this action pending the Court's ruling on Defendants' Motions to Dismiss, (Dkt. Nos. 19 and 35), and granting any further relief the Court deems appropriate.

## CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE 7.1(a)(3)(A)

The undersigned counsel has conferred with counsel for Plaintiffs regarding the requested relief via e-mail on March 23, 2020 and March 24, 2020. Counsel for Plaintiffs stated that Plaintiffs oppose the requested relief.

Dated: March 25, 2020

GREENSPOON MARDER LLP

*/s/ Roy Taub*
JEFFREY A. BACKMAN, ESQ.
(Fla. Bar No. 0662501)
jeffrey.backman@gmlaw.com
RICHARD W. EPSTEIN, ESQ.
(Fla. Bar No. 229091)
richard.epstein@gmlaw.com
ROY TAUB, ESQ.
(Fla. Bar No. 116263)
roy.taub@gmlaw.com
GREGG I. STROCK , ESQ.
gregg.strock@gmlaw.com
(Fla. Bar No. 1010140)
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954-491-1120 (Telephone)
954-343-6958 (Facsimile)

*Attorneys for Defendants Consolidated Travel Holdings Group, Inc., Daniel Lambert, James Verrillo, Donna Higgins, and Jennifer Poole*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have filed the foregoing with the Clerk of Court via CM/ECF on March 25, 2020. I further certify that any party that enters an appearance in this matter will receive a copy of this document via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notice of Electronic Filing.

                                        /s/ Roy Taub
                                        ROY TAUB