UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:19-cv-61509-WPD/Snow

| | |
|---|---|
| ANGEL BAKOV and KINAYA HEWLETT, individually and on behalf of all others similarly situated, | CLASS ACTION |
| Plaintiffs, | |
| v. | |
| CONSOLIDATED TRAVEL HOLDINGS GROUP, INC., *et al.*, | |
| Defendants. | |
| _____/ | |

## DEFENDANTS' MOTION TO STAY ALL PROCEEDINGS

Defendants Consolidated Travel Holdings Group, Inc. ("CTHG"), Daniel Lambert, James Verrillo, Jennifer Poole, and Donna Higgins, by their undersigned counsel, submit this Motion to Stay all Proceedings until a reasonable time after the COVID-19 coronavirus pandemic significantly abates, and as good cause thereof state the following:

1. This Court has broad discretion to stay proceedings in an action. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). In deciding whether to stay a case, courts generally consider (1) whether a stay will simplify the issues and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party. *See Garcia v. Acosta Tractors Inc.*, No. 12-21111-CIV, 2017 WL 4169670, *4 (S.D. Fla. Sept. 20, 2017).

2. This lawsuit concerns telephone calls allegedly related to cruise and vacation packages offered by Consolidated World Travel, Inc. ("CWT"), a subsidiary of Defendant CTHG. Defendant CTHG is indisputably in the travel industry, as are most of the individual Defendants. It is also undisputed that, in the fallout of the COVID-19 coronavirus pandemic, the travel industry has been significantly and adversely affected. Countless articles on-line evidence the fact that consumers are not buying vacation packages now; no one that previously purchased a vacation package, especially on a cruise, wants to or is able to go on vacation; no one is getting on an airplane to arrive at a vacation destination or port; and hotel bookings are sharply lower. Moreover, numerous governments have refused even to allow cruise ships with infected passengers to dock in their ports and have passengers disembark into their communities for fear of spreading the coronavirus or draining limited medical resources from local residents, further raising fears that cruise ship passengers will not be easily able to return. *See*, *e.g.*, Morgan Hines and Jayme Deerwester, *USA Today*, "Holland America ships caught in COVID-19 pandemic dock in Florida; here's how disembarkation will work" (Apr. 3, 2020), available at https://www.usatoday.com/story/travel/cruises/2020/04/01/coronavirus-thousands-carnival-passengers-sea-holland-america-florida/5101845002; David Oliver, *et al.*, *USA Today*, "Florida Gov. Ron DeSantis to accept state residents off Holland America cruise ships" (Apr. 2, 2020), available at https://www.usatoday.com/story/travel/cruises/2020/04/01/coronavirus-thousands-carnival-passengers-sea-holland-america-florida/5101845002; Kevin Peachey and Victoria Park, *BBC News*, "Coronavirus: 'I don't want a flight voucher, where's my refund?'" (Mar. 31, 2020), available at https://www.bbc.com/news/business-52105526; *The Economist*, "The coronavirus may sink the cruise-ship business: The industry has few friends and its main customers, the elderly, may shun it for good" (Mar. 31, 2020), available at

https://www.economist.com/business/2020/03/31/the-coronavirus-may-sink-the-cruise-ship-business; Mitra Sorrells, *PhocusWire*, "Data shows severe impact of coronavirus on global hospitality industry" (Mar. 26, 2020), available at https://www.phocuswire.com/str-global-hotel-data-march-21-coronavirus; William Feuer, *CNBC*, "How the deadly coronavirus brought an industry to its knees: The 'cruise lines 9/11'" (Mar. 15, 2020), available at https://www.cnbc.com/2020/03/15/cruise-lines-911-how-coronavirus-brought-industry-to-its-knees.html.

3. The great reluctance or inability to travel is obviously a result not only of the economic ramifications of the coronavirus outbreak, but also government restrictions, following the President's declaration of a national emergency and the Center for Disease Control's issuance of guidelines recommending "social distancing," urging or ordering nearly all of the country's population generally to stay at home. *See* Holly Secon and Aylin Woodward, *Business Insider*, "About 95% of Americans have been ordered to stay at home. This map shows which cities and states are under lockdown." (Apr. 7, 2020), available at https://www.businessinsider.com/us-map-stay-at-home-orders-lockdowns-2020-3.

4. Broward County, where CTHG is located, and in which almost all of its employees and Defendants Lambert, Verrillo, and Poole reside, has ordered all non-essential businesses and schools closed and directed residents generally to stay at home, *i.e.*, "shelter in place," until "the expiration of the existing State of Local Emergency . . . ." *See* Broward County Administrator's Emergency Order 20-03, *Directing Shelter-in-Place: Safer at Home Policy*, available at https://www.broward.org/CoronaVirus/Documents/BC-EmergencyOrder20-03.pdf. Fort Lauderdale, the city in which CTHG is located, and in which many of its employees reside, has enacted a stricter stay at home requirement through April 16, 2020. *See* Declaration

of Emergency and "Safer at Home" Regulations, COVID-19 State of Emergency, available at https://www.fortlauderdale.gov/home/showdocument?id=45808. The Governor of Florida just issued an executive order directing "all persons in Florida . . . to limit their movements and personal interactions outside of their home to only those necessary to obtain or provide essential services or conduct essential activities," in other words, to "stay at home." State of Florida, Office of the Governor Executive Order Number 20-91 (Apr. 1, 2020), available at https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-91.pdf.

5. And President Trump extended the federal social distancing guidelines that are the basis for these and numerous other "stay at home" or "shelter in place" orders to April 30, 2020. *See* Paul LeBlanc, Jason Hoffman and Kevin Liptak, *CNN*, "Trump extends federal social distancing guidelines to April 30" (Mar. 29, 2020), available at https://www.cnn.com/2020/03/29/politics/trump-coronavirus-press-conference/index.html. The Surgeon General has stated that he believes these federal guidelines will extend further in time. *See* Quint Forgey, *Politico*, "Social distancing guidelines will likely be in place beyond April, surgeon general says" (Apr. 1, 2020), available at https://www.politico.com/news/2020/04/01/jerome-adams-coronavirus-social-distancing-guidelines-158998.

6. All of these developments are designed to permit, if not require, people to place their own health considerations and those of the people with whom they live over working. By any reading of the applicable orders (and any stretch of the imagination), CTHG is a non-essential business and its business activities are non-essential, which is why it has been closed as a result.

7. All schools and daycare centers in South Florida have also been closed. That has further required Defendant's employees with school age children – many of Defendant's

employees – to also shoulder the tasks of educating or overseeing the remote education of their children and keeping them occupied. All while attempting to figure out how to continue to provide for their families in this great time of economic distress when their travel sector business is in a standstill given the coronavirus pandemic.

8. To put it mildly, the stress is overwhelming, and makes it exceedingly difficult for Defendant and its employees to be able to assist counsel in defending against the claims at issue in this case regarding the barest of cognizable injuries (if that) in the United States Code over some telephone calls from a while ago. Defendant's principals and its employees are unable, given the current hands they have been dealt, to work with counsel, attend to requests from counsel regarding this matter, respond to discovery requests – especially the overbroad and wide-ranging requests served by Plaintiffs – or otherwise focus on and make decisions regarding this case about telephone calls when they instead are trying to figure out how to keep their business going, save the jobs and benefits of hundreds of employees, and provide for and care for their children and families.

9. Obviously, Plaintiffs and Plaintiffs' counsel view their claims as important. But it should be even more obvious that there are a lot more important things at play and at risk right now given these largely unprecedented and cataclysmic circumstances, which have been especially and acutely felt by those in the travel industry, such as CTHG, its employees, and other Defendants. Magistrate Judge Goodman has issued two paperless orders that are poignant reminders of the perspective that should be employed now.

10. In one case, Judge Goodman felt "compelled to offer some observations in the 'let's-keep-things-in-perspective' department" in ruling upon an emergency motion for a protective order regarding the scheduling of the deposition of a corporate representative for a

cruise line company. *C.W. v. NCL (Bahamas) Ltd.*, No. 1:19-cv-24441-CMA (S.D. Fla.), Dkt. No. 38 (Mar. 21, 2020). Judge Goodman continued,

> The entire world is in the midst of a pandemic. Thousands of people worldwide have contracted the Corona virus and there have been hundreds of virus-caused deaths in the United States. Millions of Americans have been ordered to remain in their homes. Millions more have lost their jobs in the past two weeks. The stock market has taken a brutal beating in the last two to three weeks. Many people are scared. Others are panicked. Everyone is unsure about the future. Cruises have been canceled and all the major airlines have severely curtailed their flights.
>
> We are living in an unprecedented situation.
>
> \* \* \* \* \*
>
> . . . . [T]he Undersigned is shocked that counsel could not on their own resolve the issue. Given the health and economic crisis we are in, not postponing the deposition scheduled for next week is patently unreasonable.
>
> If all the issues we are currently facing were to be organized on a ladder of importance, this deposition-scheduling dispute would not even reach the bottom rung of a 10-rung ladder.
>
> It is painfully obvious that counsel for both sides failed to keep their comparatively unimportant dispute in perspective. Would the world end if the corporate deposition did not occur next week? Obviously not. Is it reasonable to require defense counsel to prepare the 30(b)(6) witness for a deposition while complying with the social distancing standard of ten feet? Absolutely not. Is it rational to expect defense counsel to enlist assistance from cruise ship attorneys and other employees (e.g., to track down documents and information) to adequately prepare the corporate representative when the entire cruise ship industry is on lockdown and thousands of employees have been let go? Of course not.
>
> So the deposition will not be taken next week. Life will go on. But the Undersigned will be requiring counsel for both sides to appear for a hearing at some point, even if they work out the rescheduled date for the corporate deposition. That hearing will require the attorneys to explain their behavior in context of the far-more-important issues this Court (and the entire world) is facing.

*Id.*

11. Ten days after the issuance of that order, the parties jointly moved to continue the case deadlines by sixty days, (id. at Dkt. No. 40), but Judge Altonaga found such an extension to be overly optimistic. Judge Altonaga instead directed the Clerk of the Court to mark the case as administratively closed and not to be restored to the active docket until issuance of a "court order following motion of the parties . . . advising they are prepared to proceed with firm – as opposed to what appear to be aspirational – dates for resolution of the case." Id. at Dkt. No. 41.

12. In another case, Judge Goodman directed a defendant that opposed an extension of the case deadlines to state all reasons justifying its opposition and added, "If defense counsel opposed the motion, then he is best advised to provide a comprehensive and rational explanation. Before filing this response, though, defense counsel may want to brush up on the concepts of karma, goodwill, grace, compassion, equity, charity, flexibility, respect, spirituality, selflessness, kindness, public spirit, social conscience, and empathy." *Martinez v. Cherry Bekaert, LLP*, No. 1:18-cv-25429-JG, Dkt. No. 48 (S.D. Fla.) (Mar. 25, 2020).

13. For these and the above-stated reasons, Defendants therefore request that the proceedings in this action be stayed until a reasonable time after the COVID-19 coronavirus pandemic significantly abates, when businesses such as CTHG's can re-open and the business and its employees have the ability to focus on this lawsuit and assisting in the defense against the claims, which is not feasible at the moment and, unfortunately, for the foreseeable future, not just because of social distancing but because of the more pressing and fundamental concerns that need to be addressed first. Any proposed date certain would be no more than "aspirational" right now given this national and international crisis in which the travel industry has been one of the hardest hit business sectors. But a stay would avoid placing additional burdens on Defendant and its employees, who are trying to manage through this crisis and are unable to devote

7

attention to a lawsuit over telephone calls from four or five years ago, and the requested stay would not unduly prejudice Plaintiffs in a world where, especially in the travel industry, "[e]veryone is unsure about the future," and, "on a ladder of importance, this" lawsuit "would not even reach the bottom rung of a 10-rung ladder." *C.W.*, Dkt. No. 38.

14.     Indeed, it should be noted that in the case from which this lawsuit was "spun off," *Bakov I*, the district court issued two administrative orders as a result of the coronavirus virus that, among other things, extended deadlines in all civil cases by seven weeks. *See* Second Amended General Order 20-0012, § 2 (N.D. Ill. Mar. 30, 2020), available at https://www.ilnd.uscourts.gov/_assets/_documents/New AMENDED GENERAL ORDER 2020-0012.pdf.  There is no good reason why this follow-on lawsuit, which for reasons addressed at length in numerous motions should be dismissed on numerous grounds, including under the claim-splitting doctrine, should proceed in a more expeditious manner than the lawsuit solely (and improperly) in aid of which this action apparently was filed, *i.e.*, *Bakov I*.

## CONCLUSION

For the foregoing reasons, Defendants Consolidated Travel Holdings Group, Inc., Daniel Lambert, James Verrillo, Jennifer Poole, and Donna Higgins respectfully request that the Court enter an order staying all proceedings in this action until a reasonable time after the COVID-19 coronavirus pandemic significantly abates, and granting any further relief the Court deems appropriate.

## CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE 7.1(a)(3)(A)

The undersigned counsel has conferred with counsel for Plaintiffs regarding the requested relief via e-mail on April 6, 2020.  Counsel for Plaintiffs stated that Plaintiffs oppose the requested relief.

Dated: April 8, 2020                             GREENSPOON MARDER LLP

/s/ Roy Taub
JEFFREY A. BACKMAN, ESQ.
(Fla. Bar No. 0662501)
jeffrey.backman@gmlaw.com
RICHARD W. EPSTEIN, ESQ.
(Fla. Bar No. 229091)
richard.epstein@gmlaw.com
ROY TAUB, ESQ.
(Fla. Bar No. 116263)
roy.taub@gmlaw.com
GREGG I. STROCK , ESQ.
gregg.strock@gmlaw.com
(Fla. Bar No. 1010140)
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954-491-1120 (Telephone)
954-343-6958 (Facsimile)

*Attorneys for Defendants Consolidated Travel Holdings Group, Inc., Daniel Lambert, James Verrillo, Donna Higgins, and Jennifer Poole*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have filed the foregoing with the Clerk of Court via CM/ECF on April 8, 2020.  I further certify that any party that enters an appearance in this matter will receive a copy of this document via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notice of Electronic Filing.

/s/ Roy Taub
ROY TAUB